OPINION
NASH, J.:
I. Factual and Procedural History
This case has a history that extends back over several years and has its basis in a separate criminal case in which the Appellant here was a defendant. It appears that in 2009, federal criminal charges were filed against Appellant’s son. Those charges were subsequently dismissed by the United States Attorney’s Office. On November 20, 2009, the Appellee Tulalip Tribes filed a criminal eomplaint against the Appellant based upon the same allegations made in the federal charges against her son. The complaint against Appellant contained 14 charges involving 58 counts.[1] *285 An eleven day jury trial was held in June, 2010. Verdicts of not guilty were returned by the jury on all charges. A Judgment of Acquittal was signed and filed by the Court on June 23, 2010. As part of that criminal ease, the tribal trial court entered a protective order on February, 2010, which presumably prohibits the disclosure of any information in the record of that case without an order of the Tulalip Tribal Court. Presumably, this order is in effect in perpetuity. These conclusions are presumed here because this Court has not seen that protective order. Neither counsel for the parties in this case (Appellant had different counsel in the criminal case) has seen the protective order, again presumably, because it is part of the record in the criminal case that is the subject of the protective order.
Appellant filed a “Complaint for Damages under Tulalip Tort Claims Act” on March 16, 2011. The Complaint names the “Tulalip Tribes and John and Jane Does 1-20, et al.” as defendants. The Complaint alleges that the unnamed defendants are “unknown individuals who performed acts outside the scope of their authority as employees or agents of Defendant Tulalip Tribes, which unauthorized acts injured Plaintiff....” (12.3) The Complaint further alleges, among other things, that the defendants did no independent investigation of the facts used as the basis for the charges against the Appellant (¶ 3.5); that the criminal proceedings against the Appellant “were designed to accomplish a purpose other than bringing an offender to justice” (¶ 3.9); that “there was no probable cause for the (criminal) proceedings ...” (¶3.10); that the proceedings “constitute an abuse of process....” (¶3.11); and that defendant’s actions “constitute a wrongful prosecution of criminal proceedings ...” against the Appellant (f 3.12). The complaint further alleges that discovery will lead to additional causes of action and reserves the right to amend the Complaint (¶ 3.13). The Complaint seeks damages in excess of $175,840.00, the total to be proven at trial, (f 3.15).
Tort claims against the Tulalip Tribe are governed by the Tribes’ Tort Claims Ordinance (Ordinance 122). That Ordinance defines the procedures that are required for any person seeking to bring a tort claim against the Tribes. Section 4(a) requires that a written notice be provided prior to any action being brought in tribal court. Section 4(b)(1) provides that the notice include the name, address and telephone number of the claimant and the claimant’s attorney, if any. The Ordinance further requires:
A concise statement describing the location, conduct, circumstances or other facts which brought about the injury; describing the injury; stating the time and place of the injury; stating the name of any Tribal employee involved, if known, and the name, address and telephone number, if known, of any other person involved or who has knowledge of the conduct, circumstances, facts or injury; and stating that amount of damages claimed.
Ordinance 122, Section 4(b)(2).
The record contains an undated written statement allegedly prepared and delivered by the Appellant prior to the filing of her case before the Tribal Court (Complaint ¶ 3.16) which describes the history of events leading up to her filing the Complaint. The timing and serving of the statement has not been disputed by the Appellee. A Proof of Compliance with the Tulalip Tribal Tort Claims Act was filed by Appellant’s counsel on March 16, 2011, *286 stating that the notice had been served by certified mail to the Chairman and Secretary of the Tulalip Board of Directors and the Office of the Tribal Attorney.
Appellant’s Complaint in this case alleges that she and her counsel were unable to provide more specific factual allegations because of the protective order that had sealed the record in the underlying criminal case. Complaint f 3.8. Appellant filed a Motion to Unseal File on May 9, 2011, seeking authorization to review the record in that case. That motion was denied in the final paragraph of the trial court’s May 27, 2011 Order dismissing the Complaint. On June 10, 2011, while a Motion for Reconsideration was pending in the civil matter, a motion was filed ex parte by the tribal prosecutor under the caption of the criminal proceeding seeking authorization to provide a copy of the “Permanent Protective Order” to counsel for the Tribes, but not to counsel for Appellant. The prosecutor’s motion sets forth no justification for it being filed ex parte, and there is no documentation in the civil case file that the prosecutor’s motion or the court order denying it was ever provided to Appellant. The prosecutor’s motion was denied on the same day as it was filed by a judge who was not presiding over the civil case in an order filed under the caption of the criminal proceeding. The basis for denying the motion was that “for the motion to be heard notice must be given to the parties and the alleged victim.” Order on Hearing, June 10, 2011, Case No. TUL-Cr-SO-2009-0791 and -0792.
On May 3, 2011, the Tulalip Tribes filed a “Motion to Dismiss Based on Tulalip Tort Claims Act Ordinance 122”. That motion was granted by an Order dated May 27, 2011. Appellant filed a Motion for Reconsideration of that Order on June 6, 2011. That Motion was denied by an Order filed on July 15, 2011.
A Notice of Appeal was timely filed with this court.
II. Issues on Appeal
Appellant identifies four issues in this appeal. Each issue is discussed and decided below.
A. Dismissal of this action under the Tulalip Tort Claims Ordinance was improper because the Trial Court also dismissed the claims against Defendants for which claims existed outside the scope of the Tort Claims Ordinance.
In granting the Tulalip Tribe’s Motion to Dismiss based upon the Tribes’ Tort Claims Ordinance, the trial court observed and concluded:
Plaintiffs Complaint states, among her other causes of action, that she suffered damages for “. .. abuse of process ...” and “... wrongful prosecution ...” (Plaintiffs Complaint 3.11 and 3.12). These causes of action are specifically excluded from the Tribe’s limited waiver of sovereign immunity under Ordinance 122, Section 5(d)(3), therefore they are barred.
The trial court’s conclusion is correct, in part. The Complaint does refer to abuse of process and wrongful prosecution, and Ordinance 122 does not waive the Tribes’ immunity as to such claims. However, the trial court misapprehends the thrust of the Complaint and the scope of the sovereign immunity defense as set forth in Ordinance 122. The Complaint expressly named a group of yet-to-be-identified individual defendants “who performed acts outside the scope of their authority as employees or agents of Defendant Tulalip Tribes.” (f 2.3, emphasis added.) By its own terms, Ordinance 122 provides immunity only to an agent, employee or officer of the Tribes acting *287 “within the scope of authority of that agent, employee or officer.” Ordinance 122, § 3,a (emphasis added).
In limiting the defense of sovereign immunity to agents, employees and officers acting within the scope of their duties, the Ordinance comports with the common law of sovereign immunity.
Generally, a tribe’s sovereign immunity only extends to individual tribal officials and employees while acting within their scope of authority. Hoopa Valley Housing v. Davis and Sherman, 7 NICS App. 34, 36 (Hoopa Valley Tribal Ct.App.2005) (citing; Hardin v. White Mountain Apache Tribe, 779 F.2d 476, 479, (9th Cir.1985); United States v. Yakima Tribal Court, 806 F.2d 853, 861 (9th Cir.1986), cert. denied, 481 U.S. 1069 [107 S.Ct. 2461, 95 L.Ed.2d 870] (1987)). “The legal rationale in support of conferring immunity on a tribal official is that the official must be able to exercise his or her duties free from intimidation, harassment and the threat of lawsuits for performing those acts of the tribal government that are within the scope of the official’s duties.” Id. at 37 (citing Satiacum v. Sterud, 10 ILR 6013, 6016 (Puy. Tr. Ct., Apr. 23, 1982)). In other words, tribal officials, officers, employees and agents are immune from suit only when acting in their representative capacity on behalf of a tribe, a tribal agency or arm of tribal government. Romanella v. Hayward, 933 F.Supp. 163, 167 (D.Conn.1996), aff'd on other grounds, 114 F.3d 15 (2d Cir.1997); Basset [t] v. Mashantucket Pequot Museum and Research Center, Inc., 221 F.Supp.2d 271, 280 (D.Conn.2002). However, “(w)hen an official commits an act prohibited by law, he acts beyond his authority and is not protected by sovereign immunity. After all, it is only common sense to conclude that States do not authorize their officers to violate their legal duties.” Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 138, 104 S.Ct. 900, 928, 79 L.Ed.2d 67 (1984).
Hoopa Valley Tribal Council v. Marshall, No. C-10-002/A-10-001, Opinion, at 3-4 (Hoopa Valley Tribal Ct.App.2011).[2]
Thus, while Ordinance 122 provides immunity against certain claims for agents, employees and officers acting within the scope of their authority, the Ordinance, contrary to the trail court’s ruling, provides no protection whatsoever for agents, employees and officers acting outside the scope of their authority. The trial court erred in dismissing the claims against the individual defendants without first providing Appellant the opportunity to conduct discovery and present evidence as to whether those individuals were acting outside the scope of their authority.
B. Dismissal of this action under the Tulaiip Tort Claims Ordinance was improper because the terms of the Tort Claims Ordinance itself authorize malicious prosecution claims against certain tribal agents, employees, or officers.
Appellant is correct. While Ordinance 122 specifically disallows claims for malicious prosecution against the tribe, that same section contains a specific exception which states:
... except that this provision does not immunize the Tribes for any acts or *288 omissions of investigative or law enforcement officers giving rise to claims for assault battery (sic), false arrest, false imprisonment or malicious prosecution ...
Ordinance 122(5)(d)(4).
This exception to the exception by its wording allows claims against the Tribes for malicious prosecution when the facts fit the exception. The prospect of claims against individuals for malicious prosecution remains open as well. Consequently, it was an error for the trial court to dismiss Appellant’s ease based upon the provisions of Ordinance 122.
C. The Notice of Claim complied with the requirements of the Tort Claims Ordinance, and contained the information required by the pre-claim notice provision.
Appellee challenged the adequacy of the notice provided by Appellant to the Tribes under the requirements of Ordinance 122. It requires:
A concise statement describing the location, conduct, circumstances or other facts which brought about the injury; describing the injury; stating the time and place of the injury; stating the name of any Tribal employee involved, if known, and the name, address and telephone number, if known, of any other person involved or who has knowledge of the conduct, circumstances, facts or injury; and stating that amount of damages claimed.
Ordinance 122, Section 4(b)(2).
It is not contested that Appellant wrote and filed the Notice of Claim when she was not represented by counsel. The notice contained in the record contains specific dates starting sometime prior to 7/31/08 which was when Appellant’s car was towed without any justifying documents and ends on 6/18/10 when her trial ended with not guilty verdicts. Three individuals are named. Appellant also states that “there were multiple departments and employees involved. The department contributing to the injury was the police department. ... And the temporary prosecutor.... I do not at this time have the names of all involved.” A number of injuries are claimed in the statement. Besides having her car towed without any documentation, Appellant alleges inadequate, unfair and biased investigations, being “railroaded”, defamation of character and slander. As a result, Appellant states the situation described caused daily stress, extreme emotional/mental anguish and physical illness, caused her to pay attorney fees, use sick and annual leave and undergo counseling.
The purpose of the notice requirement is to put the Tribes on notice of a claim and naturally includes a requirement that as much information as is available be provided. We conclude that Appellant’s Notice of Claim satisfies the statutory requirement. Appellant provided what information she had. Since the circumstances surrounding her claim extend over several years and the details of the underlying criminal case are sealed pursuant to a tribal court order, her capacity to provide concise details and the identity of individuals involved was impaired if not rendered impossible. What was provided in the Notice was sufficient to provide the Tribes with the basis for the claim.
D. Denial of Plaintiffs Motion to Unseal the Court File lacked an appropriate basis in Tribal law.
The inability of the Appellant to obtain or use any information from the underlying criminal case lies at the heart of this case. Appellant claims that a review of the record in that case might allow her to identify additional facts and individ *289 uals that would clarify existing claims, add additional claims or perhaps require abandoning some or all of her claims. However, the record in that case is the subject of a protective order issued by the trial court which presumably prohibits the disclosure of any information without a court order.
We are hampered in that we have not seen the protective order. Neither counsel for the Tribe or Appellant had a copy. Apparently the order sealing the record included the order itself. Appellant’s pursuit of her claims are frustrated by the effect of the protective order issued by the trial court prohibiting disclosure of information in the record of that criminal case without first obtaining an order of the court. Appellant sought an order to that effect and her motion was denied. The prosecutor’s request for a copy of the order was denied. Appellant’s counsel sought information from her defense counsel from the criminal trial. However, defense counsel understandably felt that the protective order prohibited her from disclosing any information. That same prohibition could as well prohibit Appellant from disclosing any information she remembers from the criminal proceeding. The trial court’s blanket denial of every request, even from the Tribes’ own counsel and prosecutor is unusual to say the least.
Not only do we have no information about the scope and wording of the protective order, we have no explanation for it. Presumably, the criminal trial was held in open court at which individuals unrelated to the case might have observed and listened to the proceeding and, in doing so, learned information that is now denied to the Appellant and which she claims is essential to her pursuit of her claims here. It is difficult to imagine circumstances that justify the sealing of the entire record in this case. The fact that the Tribes’ own attorneys were denied access to even the protective order itself speaks to the possibility of the order being overly broad.
The only reasons stated in the May 27, 2011 Order of the court in the civil proceeding for denying the Motion to Unseal are that the “the matter is dismissed with prejudice, as it is barred by the Tulalip Tribe’s [sic] sovereign immunity from suit, and because the Notice and Complaint fail to comply with Section 4(b)(2) of the Tort Claims Ordinance.” Given this Court’s rulings that (1) the matter is not barred by sovereign immunity, and (2) the notice does comply with the Tort Claims Ordinance, the trial court did not apply the appropriate legal standard. Because the trial court did not apply the appropriate legal standard, this ruling cannot be sustained. See TO 49.4.9(8) (“A matter which is within the discretion of the Tribal Court shall be sustained if it is reflected in the record that the Tribal Court exercised its discretionary authority, applied the appropriate legal standard to the facts, and did not abuse its discretion.”).
The June 10, 2011 order issued under the criminal caption does nothing more than deny the Tribal prosecutor’s ex parte request to provide a copy of the protective order to counsel for the Tribe in the civil matter. The denial of the motion is based strictly upon the prosecutor’s failure to provide notice of the motion to the alleged victim (whom the protective order presumably was designed to protect) and to the parties, including Appellant. Thus, the June 10 Order issued under the criminal caption in no way reaches the merits, and we have no cause to disturb it.
We are reluctant to remand the determination of the motion to unseal the file without providing some guidance to the trial court. The Tulalip Tribes’ court rules, including the Tribes’ rules of civil, criminal and appellate procedure, are all contained within Tribal Ordinance (TO) 49. *290 With the exception of a provision of the rules of criminal procedure that authorizes the court to seal the file of a criminal defendant who has successfully completed the conditions for a deferred prosecution[3], we can find no provisions whatsoever in TO 49 authorizing the trial court to seal a file or setting the standards by which the court may do so. Assuming for the sake of argument that the trial court has the inherent discretionary authority to seal a court file, we look to other provisions of the Tribal code for guidance as to the standards by which the court may seal, and subsequently unseal, an entire court file or portions thereof.[4]
TO 49, Title 6, which defines Tribal Offenses, is instructive. There, a protective order is defined as “a court order restraining a person from engaging in the eommission or continuance of some act which may result in irreparable harm to another” TO 49.6.1.12(33) (emphasis added). Violation of a protective order is made a Class D offense. TO 49.6.9.18. The Tribes’ rules of criminal procedure provide that the court may issue a protective order limiting pretrial discovery for “good cause,” and may preserve a party’s written statement relating to good cause “under seal.” TO 49.5.12.1(6)(a). The Tribes’ rules for civil forfeiture proceedings allow for a protective order limiting discovery in a manner that “would protect the interest of one party without unfairly limiting the ability of the other party to pursue the civil case.” TO 49.3.1.4(6). Finally, while disputes regarding the sealing and unsealing of a court file are not limited to the need for discovery in a separate civil lawsuit[5], the Tribes’ rules of civil procedure *291 provide the trial court with “absolute discretion” whether to permit any discovery, but require that in exercising that discretion, the court consider “whether the interests of justice will be promoted.” TO 49.2.14.2.
Our review of the various provisions of TO 49 addressing protective orders and discovery allow us to infer certain minimum standards applicable to the court’s presumed discretion to seal and unseal court files. The protective order must be based on good cause and must be designed to prevent irreparable harm to an identifiable person or persons. The sealing must be justified by compelling privacy or safety concerns that outweigh the public interest in access to the court record. The protective order must also not unfairly limit the ability of a party or other interested persons to pursue their rights in another forum. The protective order must promote the interests of justice of those seeking access to the protected information as well as those intended to be protected by the order.
III. Conclusion and Order
This case is remanded to the trial court for further proceedings consistent with this opinion. The trial court shall provide counsel in this case with a copy of the protective order and shall hold a hearing on Appellant’s motion to access the record of the criminal case. The trial court shall provide notice of the hearing to any alleged victims identified in the criminal proceedings. The trial court shall consider means by which Appellant, her counsel and counsel for the Tribes, could be allowed to review the record in the criminal, case, determine what portions are relevant to Appellant’s case here and how that information might be used in this ease and still protect any portions of that record which require protection. An order by the trial court resulting from that hearing shall define what, how and when Appellant will be granted access to any portion of the record and shall justify the denial of access to any portion of that record with specific findings of fact and conclusions of law.
IT IS SO ORDERED.

. The tally of 14 charges involving 58 counts is taken from Appellant's opening brief. “ ‘Count’ and ‘charge’ when used relative to allegations in an indictment or on formation are synonymous.’' Black's Law Dictionary, Sixth Edition. Without the benefit of access to the criminal file, as discussed infra, we presume the Tribes’ criminal complaint al *285 leged 58 separate and distinct violations of 14 different laws.

. Pending future publication in the Northwest Intertribal Court System's appellate reporters, the Hoopa Valley Tribal Council v. Marshall Opinion can be found and downloaded at: http://www.nics. ws/hoopa/Hoopa% 20Valley% 20Tribal% 20Council% 20v.% 20Clifford% 20Lyle% 20MarshaIl.pdf.

. TO 49.5.11.1(1 X<1).

. Although Washington State law is not controlling, we note Washington court rules provide detailed guidance regarding redacting, sealing and unsealing of court files. See Wash. Gen. R. 15. The Washington rules require a hearing with notice to the parties, as well as the victim(s) in a criminal proceeding, before a court file may be redacted or sealed. Wash. Gen. R. 15(c)(1). "After the hearing, the court may order the court files and records in the proceeding, or any part thereof, to be sealed or redacted if the court makes and enters written findings that the specific sealing or redaction is justified by identified compelling privacy or safety concerns that outweigh the public interest in access to the court record.” Wash. Gen. R. 15(c)(2). The Washington rules provide a file shall not be sealed if redaction will resolve the issues before the court. Wash, Gen. R. 15(c)(3). The Washington rules provide that sealed and redacted files are protected “from examination by the public and unauthorized court personnel,” but do not suggest that sealed and redacted files are protected from examination by the parties to the proceeding. Wash. Gen. R. 15(b)(4) and (5). A criminal file may only be unsealed upon a showing of "compelling circumstances»” but this rule presumes the file was properly sealed in the first place. Wash. Gen. R, 15(e)(2). See also, e.g., Seattle Times Co. v. Ishikawa, 97 Wash.2d 30, 640 P.2d 716 (1982) (trial court failed to comply with constitutionally mandated guidelines to narrowly tailor orders closing a hearing and sealing a file); Seattle Times Co. v. Serko, 170 Wash.2d 581, 243 P.3d 919 (2010) (vacating trial court order sealing portions of a criminal proceeding because trial court failed to hold hearing as required by Wash. Gen. R. 15 and failed to identify a compelling interest which overrides the public’s right to the open administration of justice). This Court encourages the Tribes' Board of Directors to adopt court rules providing clear guidance concerning redacting, sealing and unsealing court files.

. For example, tribal members, the public and the media may have an overriding interest in knowing the details concerning allegations of official misconduct, defective products, illegal business practices, or threats to public safety and welfare that could be hidden in a file sealed without proper justification. See, e.g. Yakima County v. Yakima Herald-Republic, 170 Wash.2d 775, 246 P.3d 768 (2011) (newspaper sought to unseal records related to public costs for court-appointed counsel); Rufer v. Abbott Labs., 154 Wash,2d *291 530, 114 P.3d 1182 (2005) (no compelling interest to seal records in a medical malpractice and product liability action); Dreiling v. Jain, 151 Wash.2d 900, 93 P.3d 861 (2004) (newspaper sought to unseal records in a shareholder derivative action); Bennett v. Smith Bunday Berman Britton, PS, 156 Wash.App. 293, 234 P.3d 236 (2010) (newspaper sought to unseal records in suit alleging malpractice by accounting firm).