OPINION and ORDER AFFIRMING APPEAL FOR LIMITED REMAND
PER CURIAM:
This matter comes before the Court of Appeals (Court) pursuant to Oral Argument Hearing on December 6, 2012. Appellant alleges that the Juvenile Court erred by ordering placement of a minor child with her grandmother that was based on evidence not seen by the parties and against the recommendations of beda?ehelh. This Court reviewed the record and affirms the appeal. The Court orders a limited remand.
BACKGROUND
The facts below are not at issue. J.D. is a minor who has a troublesome family history, a record of inappropriate and dangerous conduct, and a history of unsuccessful placements. She was adjudicated as a youth in need of care in an April 5, 2011 order, and was placed in the temporary legal custody of beda?chelh, and remains so. A January 26 report by beda?chelh for a February 9, 2012 status hearing indicates, among other things, that J.D. resided with P.C., her paternal grandmother, for approximately nine years, was returned to the care of her mother in January 2010, was choked by her father in the summer of 2010, was returned to the care of P.C. in November 2010, and ran away to live with her mother in January 2011. J.D. has a history of alcohol and marijuana abuse, sex with older men, running away, and at least two reported attempts at suicide. She has been in a number of foster homes and temporary placements over the past two years. A declaration by J.D.’s older sister claims that J.D.’s mother has chronic drug and alcohol problems and has been in treatment fourteen times. A beda?chelh report to the court on November 11, 2011 for a *138 December 8, 2011 status hearing indicates that there is a restraining order against the father and that J.D. had indicated “to her foster mother that her paternal grandmother stated she is willing to have the youth back in her home, however the grandmother is unwilling to have beda?ehelh in the home because the father lives in the home with the paternal grandmother.”
J.D. was put into a temporary placement but was subsequently removed because she was not following the rules of the placement. P.C. filed for intervention, which was granted, and then requested that J.D. be placed with her. All the parties were in general agreement that placement with P.C. was appropriate as J.D. had been placed with P.C. for nine years prior to the latest incident and had done well. The only issue with the placement was that P.C. refused to comply with beda?chelh’s request for a background check and home assessment. A hearing on P.C.’s motion for intervention was held on January 5, 2012. P.C. objected to being subjected to background checks by beda?ehelh based on three general alternative arguments: (1) that she has already been subjected to extensive background checks due to her federal employment and service in another Tulalip Tribal program, (2) that she should not have to “jump through hoops for someone else’s (i.e. J.D.’s) behavior,” and (3) her impression that beda?chelh routinely fails to protect confidential information. In its written order following the January 5 hearing, the court reserved ruling on the motion to intervene and denied visitation until P.C. provided information to the court that visits between J.D. and P.C. would be appropriate. That order states “any information filed by [P.C.] shall be sealed and may not be released without a court order.”
A second hearing on the motion to intervene was held on February 9, 2012. During this hearing, the judge referenced documents submitted to the court by P.C. which were not provided to other parties, and the judge allowed inspection by the parties but did not provide or allow copies to be made. Counsel for beda?chelh noted that the documents submitted by P.C. were at least two years old and one document was five years old. In the course of the hearing, the judge stated, “As far as the, uh, amount of information as far as whether [P.C.] is someone that is appropriate, I not only read the material here, but believe it or not, I have other sources, you know, and I checked to, and, make sure [P.C.] is going to be OK so as a result I found that’s enough.” The court then granted P.C.’s motion to intervene and granted her visitation rights.
On May 29, 2012, P.C. filed a motion requesting that J.D. be placed with her. The motion is supported by an “affidavit” which is actually an unsworn, unsigned statement by P.C. The statement explains that P.C. objects to being subjected to background and drug tests by beda?chelh because, she alleged, the mere process of conducting such checks could jeopardize her federal security clearance. She asserted that background checks performed for her federal employment and participation in other Tulalip Tribal programs should suffice. She also asserted that beda?chelh policy regarding background checks and drug tests has never b'een “vetted through” the Tulalip General Council or “approved” by the Board of Directors, and therefore they are “not applicable until the Board of Directors has passed it via resolution and the ordinance amended accordingly.” Beda?ehelh opposed the motion based upon P.C.’s refusal to cooperate with beda?ehelh in performing a criminal background check, child protective service history check, and drug testing. The *139 court found P.C.’s reasons for not cooperating with beda?chelh “reasonable.” August 2, 2012, Findings of Fact, Conclusions of Law, Opinion and Order, Finding of Fact, p. 11.
On July 19, 2012, P.C. tiled a toxicology report and a background check for herself directly with the court. Both reports were negative in all respects. Although no written motion was filed requesting that these documents be sealed, and no written order was filed doing so, it appears from the August 2, 2012 order of the court that these documents were withheld from beda?chelh and the other parties. The latter order also directed that some documents be made available for viewing by beda?chelh’s counsel at an August 16 review hearing. While the trial court’s order of August 2 specifically references the documents filed by P.C. on July 19, it also more broadly references “documents filed by [P.C.] under seal.” Similarly, the court’s August 2 Findings of Fact, Conclusions of Law, Opinion and Order broadly refers to “certain documents” filed by P.C. “relating to her fitness” that are “sealed and confidential and have not been seen by anyone other than the judge,” and that “the court relied on these documents in placing J.D.” with P.C. It is unclear if the “sealed” documents referenced in the court’s order are limited to the toxicology report and background check filed by P.C. on July 19, or if they include other documents. It is also unclear from the record whether beda?ehelh was permitted, at or after the August 16 hearing, to review all the documents relied upon by the Court in its placement order.
On August 2, 2012, the court issued its Findings of Faet, Conclusions of Law, Opinion and Order overruling the objections of beda?chelh and placing J.D. with P.C., conditioned on P.C. permitting a safety inspection of her home. On August 16, 2012, the court found that the safety check had been made and ordered J.D. placed with P.C. beda?chelh timely filed this appeal on August 22, 2012. The Notice of Appeal indicates that as of August 22, 2012, certain documents filed with the court remain under seal and had not been provided to beda?chelh.
JURISDICTION
This Court has jurisdiction over this matter pursuant to Tulalip Tribal Law and Order Code section 2.20.020.
STANDARD OF REVIEW
This Court is directed to review findings of fact under a clearly erroneous standard, TTC 2.20.090(1), and review conclusions of law by the de novo standard, TTC 2.20.090(4).
ANALYSIS
1. Did the Juvenile Court violate beda?chelh’s statutory right to discover, offer, and inspect evidence by relying on unspecified, ex parte judicial communications and withholding evidence 'provided to the Court in support of Intervener P.C.’s motion for placement?
Under Tulalip Tribal Code, TTC 4.05.100, all parties [1] to a proceeding under *140 Chapter 4.05 shall have “[t]he opportunity to discover, offer, and inspect evidence.” The Code also imposes the obligation on all parties to disclose to other parties certain material including statements by any proposed witness or agent and results of any physical or mental examination. TTC § 4.05.340(2). The obligation to disclose is an ongoing obligation and if a party finds, either before or during the hearing, additional material or information that is subject to disclosure it shall be promptly disclosed. TTC 4,05.340(2)(b).
In the instant case, the paternal grandmother submitted background documentation which she did not want beda?chelh to have access to as she was concerned about privacy violations. beda?chelh objected to the acceptance of those documents, but was overruled. The judge did allow beda?chelh a brief time to inspect some documents, but beda’chelh was not allowed to copy them for verification, and it appears likely from the record that the court did rely upon documents, information or other evidence that was never made known to the parties or was made known only after a decision was made.
This withholding of documents from beda?ehelh is in clear violation of TTC 4.05.100. beda?chelh is the entity designated by the Tulalip Tribes to independently investigate and substantiate evidence that would assist the court in making a reasoned and knowledgeable decision in the placement of minors who have come before the court. beda?chelh staff are the technical “experts” in juvenile matters. While the court has the discretion to not always follow the recommendations of beda?chelh, it must allow beda?chelh the opportunity to independently look at the evidence, investigate the authenticity of the evidence, and make recommendations to the court based on its findings and conclusions. This is the job of beda?chelh staff—-they are trained to spot falsehoods, and must make day-to-day decisions on the best interests of these children.
There is no doubt that the Juvenile Court has the right to seal or otherwise protect documents that are in evidence in a case before it, including, for good cause, sealing or otherwise restricting disclosure of documents in a youth in need of care case. TTC 4.05.340(2)(c)(iv). The Court below made no finding of good cause. Moreover, the power to protect sensitive documents does not allow withholding evidence from the parties that is relied upon by the court in reaching its decision. As this Court recently stated,
various provisions of [the Tulalip Law and Order Code] addressing protective orders and discovery allow us to infer certain minimum standards applicable to the court’s presumed discretion to seal and unseal court files. The protective order must be based on good cause and must be designed to prevent irreparable harm to an identifiable person or persons. The sealing must be justified by compelling privacy or safety concerns that outweigh the public interest in access to the court record. The protective order must also not unfairly limit the ability of a party or other interested persons to pursue their rights in another forum. The protective order must promote the interests of justice of those seeking access to the protected information as well as those intended to be protected by the order.
Bradley v. The Tulalip Tribes, 10 NICS App. -, 10 Am. Tribal Law 283 (Tulalip Tribal Ct.App.2012).[2] The withholding of *141 documents by the Juvenile Court in this case did not meet these standards.
2. Did the Juvenile Court err in concluding that physical ctistody of a Youth In Need of Care may be ordered without Appellant’s completion of its standard background investigation?
TTC 4.05.350(9) sets forth placement requirements that beda?chelh is mandated to follow when it places minor children with temporary physical custodians. The provision requires that beda?chelh follow certain preferences and priorities for out-of-home placements, “considering foremost the best interests of the child and the child’s health, safety, and welfare.” TTC 4.05.350(9)(a). beda?ehelh argues that the Youth Court’s placement order, made despite P.C.’s refusal to complete beda?chelh’s standard background check, violated TTC 4.05.350(9) “by denying beda?chelh a meaningful opportunity to conduct an investigation and provide recommendations.” Notice of Appeal, p. 5.
Here, it was the Court, not beda?chelh, that was making a placement decision, so the applicability of this Code provision might be doubted. In addition, it might be argued that beda?chelh did make a recommendation—it urged the Court not to grant the placement request. But we need not reach those issues. The Court acknowledged beda?chelh’s statutory duty “to set out recommendations for placement,” in its August 2, 2012 order. The Court concluded mat beda?ehelh’s recommendation was unnecessary for the court to place a child though. That conclusion is incorrect. Because we cannot say that this incorrect legal conclusion had no influence on the Youth Court’s decision, the placement decision must be reversed.
3. Did the Juvenile Court violate the Youth In Need of Care’s due process right to reasonable protection, from harm, by ordering placement based on ex parte judicial communication and sealed, self-reported information from a proposed physical custodian, thereby preventing beda?chelh from making meaningful recommendations to the court?
State and federal courts have held that children in foster care have constitutional substantive due process rights that governments must respect in making decisions about care and custody of foster children. Braam ex rel. Braam v. State, 150 Wash.2d 689, 698-700, 81 P.3d 851 (2003). Relying on the weight of authority among state and federal courts, the Washington State Supreme Court held that “foster children have a constitutional substantive due process right to be free from unreasonable risks of harm and a right to reasonable safety.” Id. at 698, 81 P.3d 851. Appellant asks that we recognize a similar due process right under the Indian Civil Rights Act, and that we hold that the Youth Court provided insufficient process because beda?chelh was unable to complete the investigation it deemed appropriate.
It is difficult to imagine a right more fundamental or more essential to liberty than the right of a child to a safe home. Nevertheless, we decline the invitation to decide this case on novel due process grounds. Existing Code provisions are sufficient to resolve the appeal.
CONCLUSION
Based upon the foregoing, we reverse the permanent placement of J.D. with P.C. and hold that before that placement can be confirmed, the court must provide to the parties all of the documents, evidence and information, including any information received ex parte along with the source of *142 that information, which it relied upon in reaching its decision. If there is a valid reason to limit the distribution of those documents or information, the court can shape a reasonable order to do so consistent with this opinion. Nothing in this opinion is intended to require that J.D. cannot remain in the temporary placement with P.C. pending further action by the Youth Court.
IT IS SO ORDERED.
Concur: JANE M. SMITH, Chief Justice, and DOUGLAS NASH and JOHN C. SLEDD, Justices.

. TTC § 4.05.020, Definitions. (35)"Party’' means “the parent, child, or tribe to whom certain rights accrue, including, but not limited to, with certain restrictions and limitations: the right to be notified of proceedings; to retain counsel or, in some cases, to secure Court-appointed counsel or Court-approved spokesperson; to appear and present evidence; to call, examine, and cross-examine witnesses; the unlimited or restricted right to discovery and the inspection of the records; and the right to request a hearing or appeal a final order.” (Emphasis added)

. Until officially published, viewable at http:// www.nics.ws/opimons/opinions.htm.