IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 26686-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTT ANTHONY GLASS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — We address again whether an accused's public trial rights were violated, and, if so, whether he waived the right to assert those rights on appeal. The trial court asked a potential juror questions in the privacy of court chambers. Based on our high court's recent decision in *State v. Frawley*, 181 Wn.2d 452, 334 P.3d 1022 (2014), we reverse and remand charges against Scott Glass for a new trial.

PROCEDURE

On June 19, 2007, the State charged Scott Glass with failure to register as a sex offender. The case went to trial, with voir dire occurring on November 29, 2007. At the start of voir dire, the trial court asked potential jurors questions regarding their ability to serve:

[THE COURT:] Has anybody been convicted of a serious crime and

your civil rights not yet restored? If not, please raise your hand. Or if so.

The record will reflect no response.

Is everybody able to read and write the English language? If not please raise your hand.

The record will reflect no response.

Does anybody have a physical or mental defect that would prevent them from serving? If so, please raise your hand.

Ma'am. Juror number—21.

JUROR: Can I speak with you privately?

THE COURT: Well, I've got to tell you, we just ran into some problems about that. Yes, I'd really like for you to speak with me privately. This is an open court proceeding. And as an open court proceeding the—Court of Appeals Division III has just decided that we can't speak in chambers without the permission of everybody in the courtroom—Does anybody in the courtroom have any objection to speaking in chambers with this particular juror?

If so please raise your hand.

You don't even have to be a prospective juror; you can just be a visitor. Anybody have any objection?

The record will reflect no response.

[DEFENSE COUNSEL], do you or your client have any objection to that?

[DEFENSE COUNSEL]: No, your Honor.

THE COURT: Okay. Then, Ma'am, why don't you come on in and we'll speak in chambers.

Report of Proceedings (RP) at 8-10.

The trial transcript then records a conversation in chambers. The record does not list all those present during the conversation. On the record, Juror 21 disclosed a bladder condition, telling the court: "I've had to go eight times this morning and I'm in pain." RP at 11. The trial court asked the State and Scott Glass' counsel if either had questions of the potential juror. Neither posed any question. Presumably defense counsel was present in chambers during the juror's disclosure. The trial court then asked the State and Glass'

2

No. 26686-9-III
*State v. Glass*

counsel if either had "any objections if I excuse this juror?" RP at 12. Neither objected.

Immediately thereafter, the following colloquy occurred:

> THE COURT: Do you want to speak here with your client privately?
> [DEFENSE COUNSEL]: I don't—

RP at 12. Once again, the record does not reflect if Scott Glass attended the chambers

conference. The trial court excused Juror 21.

The jury found Scott Glass guilty of failing to register as a sex offender. The trial

court sentenced Glass to 57 months confinement and 36 to 48 months of community

custody.

LAW AND ANALYSIS

Public Trial Right

Scott Glass contends the trial court violated his right to a public trial when it

interviewed a potential juror in chambers without first conducting a *Bone-Club* analysis,

referencing *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995). Glass need not

object at trial in order to raise this issue for the first time on appeal, and any error is not

de minimis. *State v. Shearer*, 181 Wn.2d 564, 569-70, 573, 334 P.3d 1078 (2014). This

court reviews alleged public trial violations de novo. *State v. Wise*, 176 Wn.2d 1, 9, 288

P.3d 1113 (2012).

The United State Constitution's Sixth Amendment, applicable to the states through

the Fourteenth Amendment due process clause, directs, in relevant part, that "[i]n all

3

criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." *In Re Oliver*, 333 U.S. 257, 273, 68 S. Ct. 499, 92 L. Ed. 682 (1948). Washington's Constitution contains two corollary provisions. Article I, section 10 of the Washington Constitution reads, "Justice in all cases shall be administered openly, and without unnecessary delay." This provision entitles the public and the press, as representatives of the public, to openly administered justice. *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 209-10, 848 P.2d 1258 (1993); *Cohen v. Everett City Council*, 85 Wn.2d 385, 388, 535 P.2d 801 (1975). Article I, section 22 of the Washington Constitution provides, in pertinent part, "In criminal prosecutions the accused shall have the right to . . . a speedy public trial." The constitutional principles arise from the guarantee of open judicial proceedings being a fundamental part of Anglo-American jurisprudence since the common law. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 n.9, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980); *Federated Publ'ns, Inc. v. Kurtz*, 94 Wn.2d 51, 66, 615 P.2d 440 (1980) (Utter, J., concurring and dissenting). America had a tradition of open criminal trials that preceded drafting of the Bill of Rights. *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 35-36, 640 P.2d 716 (1982).

The guaranty of open criminal proceedings extends to the process of juror selection, which is itself a matter of importance, not simply to the adversaries but to the criminal justice system. *Press-Enter. Co. v. Superior Court of CA*, 464 U.S. 501, 505, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984); *In re Pers. Restraint of Orange*, 152 Wn.2d 795,

804, 100 P.3d 291 (2004). In *Bone-Club*, this court enumerated five criteria that a trial court must consider on the record in order to close trial proceedings to the public. *Wise*, 176 Wn.2d at 10. The *Bone-Club* factors are:

> (1) The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show 'a serious and imminent threat' to that right.
> (2) Anyone present when the closure motion is made must be given an opportunity to object to the closure.
> (3) The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
> (4) The court must weigh the competing interests of the proponent of closure and the public.
> (5) The order must be no broader than necessary in application or duration.

*Bone-Club*, 128 Wn.2d at 258-59 (quoting *Eikenberry*, 121 Wn.2d at 210-11).

Scott Glass' appeal presents two issues (1) whether the trial court sufficiently analyzed the *Bone-Club* factors on the record prior to closing voir dire, and (2) whether Glass waived his public trial right such that he cannot assert that right on appeal. Our Supreme Court's recent opinion in *State v. Frawley*, consolidated with *State v. Applegate* disposes of both issues. *State v. Frawley*, 181 Wn.2d 452, 334 P.3d 1022 (2014).

During Brian Frawley's trial, the court proposed closing the courtroom to the public during voir dire out of concern that space was not sufficient for both the venire and the public. The court asked whether Frawley would waive his right to have the public present and engaged Frawley in an extensive colloquy, after which the trial judge

5

concluded that Frawley waived his right to have the public present during general voir

dire. The jury was selected and convicted Frawley of first degree felony murder.

In Ronald Applegate's trial, the trial court asked whether either party or any

member of the public would object to interviewing potential jurors in chambers. After

voir dire commenced, the trial judge identified one juror likely to be questioned privately

based on the questionnaire. The court again asked if any member of the jury pool or

public had any objection to the court speaking with the juror in chambers. The court

explained, "It would be a public proceeding. Any member of the public that is available

to come in [it] will have the outer door open for that purpose." *Frawley*, 181 Wn.2d at

457 (footnote omitted). Neither the State nor Applegate's counsel objected. After a brief

sidebar between Applegate and his counsel, defense counsel told the court, "I have talked

it over with Mr. Applegate. He has no objection." *Frawley*, 181 Wn.2d at 458.

*Frawley* is a splintered decision, consisting of four distinct opinions: the lead

opinion; a concurrence; a concurrence in part, dissent in part; and a dissent. Answering

our questions on appeal requires a scorecard to discern votes cast on differing issues in

*Frawley*. Justice Charles Johnson, joined by Justice Owens, wrote the lead opinion,

which found a public trial violation and no waiver in both *Frawley* and *Applegate*.

*Frawley*, 181 Wn.2d 455, 466. Both cases were thus remanded for new trials. On the

issue of waiver, the lead opinion focused on the overlap between waiver and the second

6

*Bone-Club* factor, and also the structural nature of public trial errors. *Frawley*, 181 Wn.2d at 460-64.

Justice Stephens, joined by Justice Fairhurst, concurred with the *Frawley* lead opinion's closure analysis and outcomes. *Frawley*, 181 Wn.2d at 466-67, 469 (Stephens, J., concurring). But Justice Stephens disagreed with the lead opinion's emphasis on structural error, writing: "Whether a defendant waives his right to assert a constitutional error presents a different question from whether such error occurs." *Frawley*, 181 Wn.2d at 467 (Stephens, J., concurring). Justice Stephens reasoned that Ronald Applegate could not have knowingly waived his public trial right since the trial court mischaracterized its closure as a "public proceeding." *Frawley*, 181 Wn.2d at 469 (Stephens, J., concurring). Thus, according to Justice Stephens, any waiver by Applegate may have been premised on a misstatement of law. *Frawley*, 181 Wn.2d at 468-69 (Stephens, J., concurring).

Justice McCloud, joined by Justice James Johnson and Justice González, also concurred with the lead opinion's closure analysis, but dissented on the issue of waiver. *Frawley*, 181 Wn.2d at 469-70, 476 (McCloud, J., concurring in part, dissenting in part). Because "Applegate got the right to object to courtroom closure, got to 'talk[] it over' with his own (presumptively effective) lawyer, and provided his answer, through counsel, that he did not object." Justice McCloud would conclude that Ronald Applegate knowingly waived his public trial right. *Frawley*, 181 Wn.2d at 473-74, 476-77 (McCloud, J., concurring in part, dissenting in part).

7

Justice Wiggins, joined by Chief Justice Madsen, dissented on the issue of waiver,

writing: "Waiver is one way to lose on appeal; failure to object or show prejudice is

another." *Frawley*, 181 Wn.2d at 477 (Wiggins, J., dissenting). Justice Wiggins wrote:

"The lead opinion simplistically assumes that any time jurors are questioned in chambers

the court has committed a structural error." *Frawley*, 181 Wn.2d at 480 (Wiggins, J.,

dissenting).

Our first task is to analyze *Frawley* to determine if the high court would hold that

Scott Glass' public trial rights were violated when the trial court questioned one juror in

chambers. We will later ask whether, under *Frawley*, the state Supreme Court would rule

that Scott Glass waived his rights.

Justice Stephen's concurrence and Justice McCloud's concurrence/dissent

disagreed with only the lead opinion's waiver analysis. Thus, seven Justices agreed with

the lead opinion's analysis on when and whether a trial court sufficiently analyzes the

*Bone-Club* factors on the record prior to a closure. We thus rely exclusively on Justice

Charles Johnson's lead opinion in addressing the issue of a violation of the public trial

right.

Justice Charles Johnson penned:

> The public trial right applies to jury selection, including the
> individual questioning of prospective jurors, *Wise*, 176 Wn.2d at 11, but the
> right is not absolute, *Bone-Club*, 128 Wn.2d at 259. A trial court may
> question potential jurors individually outside of the public's presence—
> thereby closing the courtroom—but only after considering the five *Bone-*

8

*Club* factors on the record. *Wise*, 176 Wn.2d at 13. Closure of the
courtroom without this analysis is a structural error for which a new trial is
the only remedy. *Wise*, 176 Wn.2d at 15.

*Frawley*, 181 Wn.2d at 459. (footnote omitted).

The State of Washington argues that the trial court sufficiently analyzed the *Bone-Club* factors prior to interviewing Juror 21 in chambers. On this issue, the facts are strikingly similar to *Applegate*.

In *Applegate*, although the trial judge stated on the record that he had analyzed the *Bone-Club* factors and twice asked the courtroom if Applegate or any member of the public objected, he failed to articulate a compelling interest for the closure, weigh this compelling interest against any competing interests, or consider alternatives such that the closure was the least restrictive means of protecting any threatened interest and no broader than necessary.

*Frawley*, 181 Wn.2d at 459.

Like the trial judge in *Applegate*, Scott Glass' trial judge asked if Glass or any other person objected to the interviewing of Juror 21 in chambers. The trial judge, however, neglected to identify a compelling interest for the closure, weigh this interest against competing interests, or consider alternatives. We might ascertain, as the State suggests, the compelling interest as Juror 21's privacy interest in her physical health. But trial courts must "articulate and assess every *Bone-Club* factor on the record." *Frawley*, 181 Wn.2d at 460. "Weighing this compelling interest against competing interests ensures that trial courts give due consideration to the interests furthered by maintaining an open proceeding, such as fostering public confidence in the system and the appearance

of fairness." *Frawley*, 181 Wn.2d at 460.

The State argues that Scott Glass needed to provide the trial court a least restrictive alternative to the chambers conference. No decision supports this argument. Washington decisions require the trial court to affirmatively weigh the *Bone-Club* factors on the record. The obligation to identify a compelling interest, weigh the competing interests, and analyze less restrictive alternatives is on the trial court. *Bone-Club*, 128 Wn.2d at 261. Reviewing courts may not engage in the *Bone-Club* analysis if the trial court fails to do so, such that a trial court's failure to enter findings is nearly an automatic remand for a new trial. *State v. Strode*, 167 Wn.2d 222, 228-29, 217 P.3d 310 (2009); *Bone-Club*, 128 Wn.2d at 260-61. Regardless of an overriding interest in closing the courtroom, the reviewing court will reverse if the trial court did not make appropriate findings. *State v. Leyerle*, 158 Wn. App. 474, 481, 242 P.3d 921 (2010).

The State also argues that the short recess to chambers with Juror 21 does not constitute a closure. Although our courts have discussed de minimis violations, Washington courts have never approved trivial violations of this constitutional right. *State v. Strode*, 167 Wn.2d at 230; *State v. Easterling*, 157 Wn.2d 167, 180, 137 P.3d 825 (2006); *State v. Brightman*, 155 Wn.2d 506, 517, 122 P.3d 150 (2005); *Leyerle*, 158 Wn. App. at 485. In each of the four decisions, the Supreme Court rejected arguments of the State that a closure was trivial.

Because the trial court did not analyze each *Bone-Club* factor on the record before

instituting the closure, we hold it violated Scott Glass' right to a public trial.

Waiver

After a review of all *Frawley* opinions, we hold that Scott Glass may assert his public trial rights for the first time on appeal, because he did not knowingly, intelligently, and voluntarily waive that right under Justice C. Johnson's lead opinion, Justice Stephens's concurrence, and Justice McCloud's concurrence/dissent. A close perusal of the opinions show that seven of the nine justices would rule that Glass did not waive his rights.

The lead opinion for *Frawley* set forth the general rule for waiver, and then noted how waiver differs in different constitutional circumstances:

> A "waiver" is an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). Courts "indulge every reasonable presumption against waiver of fundamental rights," *City of Bellevue v. Acrey*, 103 Wn.2d 203, 207, 691 P.2d 957 (1984) (citing *Glasser v. United States*, 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680 (1942)), and the prosecution bears the burden of establishing a valid waiver, *State v. Wicke*, 91 Wn.2d 638, 645, 591 P.2d 452 (1979). In general, the waiver of a constitutional right must be made knowingly, voluntarily, and intelligently, *State v. Thomas*, 128 Wn.2d 553, 558, 910 P.2d 475 (1996), but waivers of different constitutional rights meet this standard in different ways. *Compare Thomas*, 128 Wn.2d at 559 ("As with the right to self-representation, the right not to testify, and the right to confront witnesses, the judge may assume a knowing waiver of the right from the defendant's conduct."), *with City of Seattle v. Williams*, 101 Wn.2d 445, 452, 680 P.2d 1051 (1984) (knowing waiver requires defendant be informed of his constitutional right to a jury trial, and if the right is waived, he must be afforded a certain number of days in which to change his mind); *State v. Stegall*, 124 Wn.2d 719, 725, 881 P.2d 979 (1994) ("[T]he inquiry by the

No. 26686-9-III
*State v. Glass*

court will differ depending on the nature of the constitutional right at issue.").

*Frawley*, 181 Wn.2d at 461. Under the lead opinion, "a knowing, voluntary, and intelligent waiver of the public trial right would require, at the very least, a written waiver signed by the defendant expressly acknowledging and waiving the right." *Frawley*, 181 Wn.2d at 462. Because Scott Glass did not waive his right to a public trial in writing, Glass may, under the lead opinion, raise the issue for the first time on appeal. At least two Justices would not find waiver in Glass' case because of the lack of a writing.

The lead opinion additionally emphasized that "[j]ust because a valid affirmative waiver renders a closure free from challenge on appeal should not mean that the error does not occur to the detriment of others." *Frawley*, 181 Wn.2d at 464.

> While it may be true that a closure should not be subject to challenge on appeal when there is a valid affirmative waiver of a defendant's article I, section 22 public trial rights, it is necessary to emphasize that the doctrine of affirmative waiver is inconsistent with the *Bone-Club* analysis. This is the case because the *Bone-Club* analysis already incorporates a waiver analysis as the second factor, which explicitly compels the trial court to ask if anyone objects to the closure.

*Frawley*, 181 Wn.2d at 463.

Justice Stephens agreed with the lead opinion's outcome, but criticized that "the lead opinion clouds the clarity of this holding by going on to suggest that the very waiver analysis it applies is inconsistent with our *Bone-Club* analysis." *Frawley*, 181 Wn.2d at 467 (footnote omitted) (Stephens, J., concurring). Justice Stephens emphasized that

12

"even in the absence of a full *Bone-Club* analysis, a defendant is entitled to waive his right to an open court if the waiver meets the constitutional standard for waiver." *Frawley*, 181 Wn.2d at 467 (Stephens, J., concurring).

Still, Justice Stephens' concurrence directs against finding waiver in this case. Justice Stephens wrote: "[Applegate] indicated, through counsel, that he had no objection to in chambers voir dire, but the discussion that preceded the conversation between the court and counsel concerning Applegate's waiver was confused at best and misstated the law at worst." *Frawley*, 181 Wn.2d at 468 (Stephens, J., concurring). The trial court in *Applegate* insisted that its "in-chambers proceeding was not a closure," which "strongly suggested that no public trial right was even implicated." *Frawley*, 181 Wn.2d at 469 (Stephens, J., concurring). Given this inaccurate characterization of his rights, Applegate could not have made "a 'knowing' and 'intelligent' decision to 'waive' his right." *Frawley*, 181 Wn.2d at 469 (Stephens, J., concurring).

> The presence or absence of a *Bone-Club* analysis is not determinative of whether a defendant will be allowed to challenge a violation of article I, section 22. It is equally important to recognize that a waiver is valid only when knowingly, intelligently, and voluntarily made, and this must be clear in the record.

*Frawley*, 181 Wn.2d at 469 (Stephens, J., concurring). Defense counsel's lack of objection is insufficient, given Justice Stephens' treatment of *Applegate*, to show that Scott Glass knowingly, intelligently, and voluntarily waived his public trial right on the

13

record. Thus, two additional Justices would not find waiver in Scott Glass' case because of the lack of an intelligent waiver.

Last, Justice McCloud's concurrence/dissent also directs against finding waiver in this case. Finding an analogy to the right to a jury "apt and workable," Justice McCloud would rule "a statement on the record by defense counsel can support a waiver when the record, fairly read, indicates that the defendant knew, heard, understood, and agreed with what the lawyer was saying." *Frawley*, 181 Wn.2d at 475-76 (McCloud, J., concurring in part, dissenting in part). In a parenthetical, Justice McCloud summarized and quoted *State v. Stegall*, 124 Wn.2d 719, 729, 881 P.2d 979 (1994) as standing for:

> [W]aiver of right to 12-person jury valid only if record shows "(1) a personal statement from the defendant expressly agreeing to the waiver, *or* (2) *an indication that the trial judge or defense counsel has discussed the issue with the defendant prior to the attorney's own waiver*" (emphasis added)).

*Frawley*, 181 Wn.2d at 475-76 (McCloud, J., concurring in part, dissenting in part). The emphasis is Justice McCloud's. As noted, because "Applegate got the right to object to courtroom closure, got to 'talk[] it over' with his own (presumptively effective) lawyer, and provided his answer, through counsel, that he did not object," Justice McCloud would conclude that Applegate knowingly waived his public trial right. *Frawley*, 181 Wn.2d at 473-74, 476-77 (McCloud, J., concurring in part, dissenting in part).

As in *Applegate*, Scott Glass' trial judge asked if anyone objected to in chambers interviewing, and specifically asked defense counsel if there was any objection.

Nevertheless, unlike *Applegate*, the record lacks any evidence that Scott Glass conferred with defense counsel prior to counsel's waiver. Without guidance from counsel, defendant might not understand his right to a public trial, its extent, or its import. Justice McCloud's concurrence/dissent, given its emphasis on Ronald Applegate having conferred with counsel, directs against finding waiver in this appeal.

The State of Washington contends Scott Glass' silence during the closure and chamber conference requires affirmation of his conviction. The *Frawley* decision defeats this contention. Our state high court repeatedly, despite numerous dissents, held that the public trial right is not waived by silence. *Strode*, 167 Wn.2d at 229; *Bone-Club*, 128 Wn.2d at 257; *State v. Marsh*, 126 Wash. 142, 146-47, 217 P. 705 (1923). A defendant does not waive his or her right to a public trial by failure to lodge a complaint or by his or her attorney participating in closed proceedings. *In re Pers. Restraint of Morris*, 176 Wn.2d 157, 166-67, 288 P.3d 1140 (2012); *Leyerle*, 158 Wn. App. at 482. Courts uphold a waiver of the right to a public trial only if the defendant, not his attorney, expressly declares a waiver on the record after being explained his rights. *State v. Herron*, 177 Wn. App. 96, 104, 318 P.3d 281 (2013), *review granted*, 182 Wn.2d 1001, 342 P.3d 326 (2015); *State v. Castro*, 141 Wn. App. 485, 490-91, 170 P.3d 78 (2007).

## CONCLUSION

We reverse Scott Glass' conviction for failing to register as a sex offender. We remand the case for a new trial.

No. 26686-9-III
*State v. Glass*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

I CONCUR:

_____
Brown, A.C.J.

16

No. 26686-9-III

KORSMO, J. (concurring) — This case illustrates some of the problems of deciding

an appeal seven years after its commencement without obtaining briefing on the

developments in the law during that time. I agree with the majority that the trial court

erred in failing to completely apply on the record its *Bone-Club*[1] analysis, particularly the

balancing component, and that this error requires reversal under existing precedent. I do

not agree that the decision in *State v. Frawley*, 181 Wn.2d 452, 334 P.3d 1022 (2014),

governs on the waiver issue. That fractured opinion is non-precedential except in its

result.

It is well settled in Washington that opinions which do not capture a majority of

the court are not precedential. *In re Pers. Restraint of Francis*, 170 Wn.2d 517, 532 n.7,

242 P.3d 866 (2010). When faced with applying such a case, the rule in the federal

courts is that the narrowest opinion concurring in the result provides the holding of the

court. *Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977).

Washington at times has followed this approach. *E.g., Davidson v. Hensen*, 135 Wn.2d

112, 128, 954 P.2d 1327 (1998). More recently, the Washington rule has been restated so

that a fragmented court's "holding is the narrowest ground upon which a *majority*

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

agreed." *Francis*, 170 Wn.2d at 532 n.7 (emphasis added). Thus, in the mathematics of joining disparate opinions, two plus one plus two does not necessarily equal five.

Accordingly, I do not see the need to try and piece together a rule on the waiver issue from *Frawley* despite the majority's valiant attempt since it is less than clear how we can do so. Under either standard, however, the requirement of a written waiver suggested by the lead *Frawley* opinion is not workable. Like any other procedural trial right, waiver of public trial should be analyzed by the actions taken by the defendant and his counsel rather than a written waiver or colloquy associated with giving up the fundamental rights to trial or jury. For instance, at trial a defendant has both the right to testify and to not testify. The defendant typically chooses to exercise one of those rights without waiving the other right. The same applies to the right to call, or not call, witnesses, or the right to cross-examine (or not) opposing witnesses. We do not require waiver of every action not taken.

Still, for waiver of the public trial right to apply there must be some evidence on the record that the defendant knew he had the right to agree or disagree with a closure request. That is a close call on the facts of this case. With the benefit of hindsight from seven years development of this issue, the trial court could have made clearer to Mr. Glass that he had the right to challenge the closure suggestion and inquired specifically whether he wanted the issue heard publicly or privately. If not for the *Bone-Club* error—

2

No. 26686-9-III
*State v. Glass—concurrence*

for which I do not fault the trial court in the least for making a decent attempt to comply with developing and unclear standards—I might conclude differently on the waiver issue. Since we do not know exactly what counsel informed his client about during their private exchange, however, I agree that waiver has not been established.

_____
Korsmo, J.

3