**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 79849-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JAIRO R DE LOS SANTOS-MATUZ, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Jario De Los Santos-Matuz appeals his convictions for two counts of second degree rape of a child. De Los Santos-Matuz argues that the trial court deprived him of a fair trial by admitting improper propensity evidence barred by ER 404(b). He also claims that the trial court's use of initials in place of the alleged victim's name in court documents violated his constitutional rights, requiring reversal. We disagree and affirm.

I.

In March 2017, 15-year-old A.M.B. reported to her mother that her uncle, De Los Santos-Matuz, had touched her breasts and vagina and put his finger inside her vagina. Her mother took A.M.B. to the police station, where A.M.B. provided an audio and

video-recorded statement, as well as a written statement. Following an investigation, the State charged De Los Santos-Matuz with two counts of second degree rape of a child between June 13, 2014 and September 30, 2014, when A.M.B. was 12 years old.

At a pretrial hearing, the trial court considered the State's motion to admit evidence of six incidents under ER 404(b) to show De Los Santos-Matuz's lustful disposition toward A.M.B. and as res gestae. In particular, the State identified the following incidents: (1) while she was at his house for a sleepover with her cousin in June 2014, De Los Santos-Matuz bit A.M.B.'s breast; (2) during a sleepover visit in August 2014, De Los Santos-Matuz asked A.M.B. at the dinner table, "Can I eat you?" (3) when he drove her home after the August 2014 sleepover, De Los Santos-Matuz asked A.M.B. if she "liked" what had happened; (4) when she denied liking what happened while he drove her home, De Los Santos-Matuz told her he would not do it again, but not to tell anyone because they would get in trouble; (5) after she refused to go into a room with him at a family gathering in December 2014, De Los Santos-Matuz asked her, "Are you acting like this because of what happened?" and (6) at his home on another occasion, when a door opened into a room when she was sitting on his lap, De Los Santos-Matuz pushed her off his lap. The State presented an offer of proof on each incident and explained that the alleged rapes occurred at the August 2014 sleepover, at night after the comment at the dinner table and the next morning before the ride home. The State argued that the evidence of the six incidents was relevant to show De Los Santos-Matuz's lustful disposition toward A.M.B., even though the crime of rape does not require proof of sexual gratification.

In response, De Los Santos-Matuz argued (1) the State appeared to be relying on propensity rather than lustful disposition; (2) some of the incidents were benign and not necessarily sexual—such as the "eat you" comment and the lap incident; (3) the incidents that happened "after the fact" of the alleged rapes should not be admitted; and (4) the relevance of the incidents was "on the line," such that they should be excluded as unduly prejudicial after a proper balancing test.

The trial court considered each incident on the record "one by one," reviewed and clarified the State's offer of proof and arguments, and observed that the incidents could be viewed "in three categories," in that the first incident involved biting the breast; the second, third, and fourth allegedly occurred immediately before or after the alleged rapes; and the fifth and sixth were some time later. The trial court explained on the record its decision to admit evidence of some of the incidents and exclude others. As to the first incident of biting the breast at the June 2014 sleepover, the trial court found "by a preponderance of the evidence and based on the State's offer of proof, that the misconduct occurred." Citing State v. Ray, 116 Wn.2d 531, 537, 806 P.2d 1220 (1991), the trial court determined that the evidence was relevant to show lustful disposition toward "this particular victim" and that the probative value was not substantially outweighed by the danger of unfair prejudice.

As to the second, third, and fourth incidents, the trial court found the evidence relevant as res gestae, that is, "admissible to complete the story or provide immediate context for the events close in time and place to the . . . alleged rapes." As to the fifth and sixth incidents, the trial court did not find that the incidents happened, and stated

that even had it so found, the evidence would not "go towards lustful disposition," such that a balancing test was not necessary and the evidence would not be admitted.[1]

At trial, A.M.B. testified, identifying herself by name to the jury. A.M.B. described the June 2014 sleepover, testifying that De Los Santos-Matuz came into the room where she and her cousin were playing and began tickling them both on their stomachs, over their clothes. A.M.B. testified that when her cousin left the room, De Los Santos-Matuz bit A.M.B.'s right breast over her clothes.

A.M.B. also testified about the August 2014 sleepover. While she and her cousins were watching a movie with De Los Santos-Matuz after dinner, she shared a blanket on the floor with De Los Santos-Matuz. She testified that he put his hand under her pajama bottoms and under her underwear and forced a finger into her vagina. She testified she was scared and embarrassed and asked him to stop. She testified he licked his finger and began "playing" with her vagina. He stopped after less than five minutes, after which A.M.B. went to sleep.

A.M.B. testified that, the next morning, De Los Santos-Matuz carried her into his room and put her down on the bed, where he pulled off her pajama bottoms, spread her legs, and licked her vagina. A.M.B. was scared and embarrassed; when he asked if she wanted to go to her cousin's room to sleep, she said yes and left the room. She also testified that when he drove her home later, De Los Santos-Matuz asked her if she "liked it," told her he would not do it again, and told her not to tell anyone because they "would get in trouble."

---

[1] After a jury trial resulted in a mistrial, the parties agreed that the trial court's pretrial rulings would be applied in the second trial.

Throughout the trial, the attorneys, and other witnesses referred to A.M.B. by name before the jury. But the "to convict" jury instructions referred to her as "A.M.B."

The jury found De Los Santos-Matuz guilty of both counts of second degree rape of a child. De Los Santos-Matuz appeals.

II.

De Los Santos-Matuz first contends that the trial court erred by admitting A.M.B.'s testimony that he tickled her and bit her breast in June 2014, evidence he contends is nothing more than improper propensity evidence under ER 404(b). We disagree.

ER 404(b) prohibits admission of evidence offered to "show the character of a person to prove the person acted in conformity" with that character at the time of the crime. State v. Foxhoven, 161 Wn.2d 168, 174, 163 P.3d 786 (2007) (quoting State v. Everybodytalksabout, 145 Wn.2d 456, 466, 39 P.3d 294 (2002)). A court may admit evidence of "other crimes, wrongs, or acts" under ER 404(b) for other purposes, as long as it (1) finds by a preponderance of evidence that the act occurred; (2) identifies the purpose for introducing the evidence; (3) determines the evidence is relevant to prove the crime charged; and (4) weighs the probative value against the prejudicial effect. Foxhoven, 161 Wn.2d at 175. When the trial court has correctly interpreted the rule, we review the admission of evidence under ER 404(b) for an abuse of discretion. Foxhoven, 161 Wn.2d at 174.

De Los Santos-Matuz does not contend that the trial court failed to properly interpret the rule or to complete the required four-part analysis. Instead, relying on similar dictionary definitions of "disposition" and "propensity" defining both as

"inclination," he argues that evidence of lustful disposition is "propensity evidence" that should be inadmissible under the "categorical bar" of ER 404(b) as described in State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). While acknowledging that Washington courts have repeatedly held that evidence of lustful disposition can be properly admitted under ER 404(b), De Los Santos-Matuz contends that any difference in the terms is "simply semantics" and the justification is "wholly at odds with" the rule.

But, in Gresham, the court described ER 404(b) as prohibiting the admission of evidence for "one improper purpose"—that is, to show propensity—and yet allowing trial courts to admit such evidence for "an undefined number of proper purposes," provided they apply the "thorough analytical structure" developed by Washington courts. Gresham, 173 Wn.2d at 420-21. Because the trial court properly interpreted and applied ER 404(b) to evidence offered to show a common scheme or plan, the Gresham court affirmed the admission of evidence that one defendant had molested "four other girls" because the circumstances of those other acts were "markedly similar to the charged crime." Gresham, 173 Wn.2d at 422-23.

In Ray, the court acknowledged that it had "consistently recognized that evidence of collateral sexual misconduct may be admitted under ER 404(b) when it shows the defendant's lustful disposition directed toward the offended female." It is not enough to "just reveal defendant's general sexual proclivities"; the evidence must be "directly connected" to the victim and show "a sexual desire" for that "particular" individual, "which in turn makes it more probable that the defendant committed" the charged offense against that particular individual. Ray, 116 Wn.2d at 547; see also State v. Medcalf, 58 Wn. App. 817, 822-23, 795 P.2d 158 (1990); State v. Ferguson, 100 Wn.2d

131, 133-34, 667 P.2d 68 (1983). In other words, Washington courts recognize a significant difference between a purpose of "showing [one's] character and action in conformity with that character" and a purpose of showing one's sexual desire for a specific individual and action in conformity with that individualized sexual desire. Gresham, 173 Wn.2d at 425. While the words used to describe those different purposes may be similar, De Los Santos-Matuz identifies no Washington authority requiring them to be viewed as identical or treated identically under ER 404(b).

Here, the trial court applied the required thorough analysis and exercised its discretion to admit the evidence about the June 2014 sleepover for a proper purpose under Washington case law, including Gresham and Ray. De Los Santos-Matuz demonstrates no abuse of discretion.

Moreover, error in admitting evidence under ER 404(b) "is harmless 'unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" Gresham, 173 Wn.2d at 425 (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)). De Los Santos-Matuz claims that "a reasonable juror could entertain doubts as to the strength of the state's case," given that the first trial resulted in a hung jury after hearing the testimony about the June 2014 sleepover. This is unpersuasive, particularly given the jury's unanimous finding of guilt following the second trial.

De Los Santos-Matuz's reliance on State v. Gunderson, 181 Wn.2d 916, 337 P.3d 1090 (2014), is also misplaced. In Gunderson, the trial court admitted evidence of the defendant's prior acts of domestic violence against the alleged victim to impeach the credibility of the alleged victim's testimony that he did not assault her. Gunderson, 181

Wn.2d at 920-21.  The court held that the trial court erred in admitting the evidence and the error was not harmless because minimal evidence showed that he had assaulted her.  Gunderson, 181 Wn.2d at 919-20.

Here, the evidence of A.M.B.'s testimony about the rapes, independent of the June 2014 incident and including her description of De Los Santos-Matuz's comment immediately after the August 2014 sleepover about getting "in trouble" if she told about "what happened," persuades us that the outcome of the trial would not have been materially affected had the jury not heard about the June 2014 sleepover.  The jury had an opportunity to assess A.M.B.'s credibility and weigh the evidence of De Los Santos-Matuz's comments suggesting his knowledge of his guilt for touching, penetrating, and licking A.M.B.'s vagina.  There is no reasonable probability that the result would have been any different had the jury not heard testimony that he bit her breast two months earlier.  See Gresham, 173 Wn.2d at 425 (any error in failing to give ER 404(b) limiting instruction regarding prior sex offenses was harmless, given overwhelming evidence of guilt).

## II.

De Los Santos-Matuz also argues that use of A.M.B.'s initials in court documents (1) violated the guarantee of open administration of justice in article I, section 10 of the Washington Constitution; (2) constituted a judicial comment on the evidence in violation of the Washington Constitution article IV, section 16; and (3) undermined the presumption of innocence in violation of his right to due process.  We disagree.

We review de novo an alleged violation of the constitutional guarantee of open administration of justice.  State v. Smith, 181 Wn.2d 508, 513, 334 P.3d 1049 (2014).

As De Los Santos-Matuz argues, a trial court's redaction of names in court documents with no analysis on the record under Seattle Times Co. v. Ishikawa, 97 Wn.2d 30, 640 P.2d 716 (1982) may require reversal as a violation of this constitutional provision. Hundtofte v. Encarnacion, 181 Wn.2d 1, 6, 330 P.3d 168 (2014); Doe G. v. Dep't of Corr., 190 Wn.2d 185, 201, 410 P.3d 1156 (2018). But an Ishikawa analysis is not required if the appellant, who bears the burden, cannot show that the challenged redaction constituted a courtroom closure. Smith, 181 Wn.2d at 513-14; State v. Love, 183 Wn.2d 598, 605, 354 P.3d 841 (2015). A courtroom closure occurs (1) "'when the courtroom is completely and purposefully closed to spectators so that no one may enter and no one may leave'" or (2) "where a portion of a trial is held someplace 'inaccessible' to spectators." Love, 183 Wn.2d at 606 (quoting State v. Lomor, 172 Wn.2d 85, 93, 257 P.3d 624 (2011)).

A.M.B. testified under her full name in open court and the attorneys and other witnesses spoke her name, not her initials, in court. Her testimony was not someplace "inaccessible" to spectators; any member of the public would have been able to listen to her name. Because De Los Santos-Matuz fails to show a court closure occurred under the circumstances of this case, the trial court did not violate the constitutional guarantee of open administration of justice by failing to conduct an Ishikawa analysis.

A jury instruction may constitute a judicial comment on the evidence in violation of the Washington Constitution article IV, section 16, if it reveals the court's personal evaluation of the credibility, weight, or sufficiency of the evidence presented at trial. See State v. Sivins, 138 Wn. App. 52, 58, 155 P.3d 982 (2007). We review jury

instructions de novo, in context and as a whole.  State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006).

De Los Santos-Matuz contends that, after granting in part his motion to prevent the State from referring to A.M.B. as a "victim," the trial court's use of initials "to conspicuously conceal [her] identity" in the "to convict" instructions, "without explanation," was "tantamount to declaring her a victim."  Acknowledging that no Washington appellate court has addressed such a claim in a published opinion, De Los Santos-Matuz claims that federal courts have "found that the use of pseudonyms in civil sexual assault trials constitute a judicial comment on the evidence."  However, the federal court cases described in his brief appear to involve trial court decisions denying plaintiffs' requests to proceed to trial under a pseudonym rather than analysis of language in any particular jury instruction.  His citation to such authority is not persuasive.

Our Supreme Court has held that the use of a victim's full name in the jury instructions does not constitute a comment on the evidence.  Levy, 156 Wn.2d at 722.  This court has also held that, in the context of a criminal trial, using the word "victim" does not ordinarily convey the court's personal opinion of the case to the jury.  State v. Alger, 31 Wn. App. 244, 249, 640 P.2d 44 (1982).  Thus, we reject De Los Santos-Matuz's challenge to the jury instruction; we hold that the use of initials in the to-convict instruction was not a judicial comment on the evidence.

De Los Santos-Matuz also claims that the use of initials in the to-convict instruction identified A.M.B. as a victim, thereby undermining the presumption of innocence and relieving the State of its burden of proof in violation of his constitutional

right to due process. We are not persuaded that a juror would presume that a person who testified at trial, identifying herself by name, and to whom other witnesses and the attorneys referred by name, was a victim simply because of the use of her initials. And, De Los Santos-Matuz does not argue or show that the jury was not properly instructed on the presumption of innocence, the burden of proof, or the elements of the crimes charged. When viewed as a whole, the instructions did not lower the burden of proof or violate due process.

Affirmed.

_Mann, C.J._

WE CONCUR:

_Dwyer, J._

_Bowman, J._