[Nos. 47604–7, 47623–3. En Banc. February 11, 1982.]

SEATTLE TIMES COMPANY, *Petitioner,* v. RICHARD M. ISHIKAWA, *as Judge of the Superior Court, Respondent.*

THE HEARST CORPORATION, *Petitioner,* v. RICHARD M. ISHIKAWA, *as Judge of the Superior Court, Respondent.*

*Davis, Wright, Todd, Riese & Jones,* by *P. Cameron DeVore, Marshall J. Nelson,* and *Daniel M. Waggoner,* for petitioner Seattle Times Co.

*Foster, Pepper & Riviera, Camden M. Hall,* and *G.*

*Richard Hill,* for petitioner Hearst Corp.

*Norm Maleng, Prosecuting Attorney,* and *Fred A. Kaseburg, Deputy,* for respondent.

BRACHTENBACH, C.J.—The issue is whether a superior court judge was justified in closing a pretrial hearing involving a motion to dismiss. A corollary question is presented by the judge's sealing of the record of that proceeding and his continued refusal to open the record to the public.

This action arose out of the case of State v. Marler, a murder trial conducted in the King County courtroom of Judge Richard Ishikawa. Two Seattle daily newspapers, the Seattle Times and the Seattle Post–Intelligencer (P–I), separately filed in this court original mandamus actions against Judge Ishikawa. Those actions, brought pursuant to RAP 16.2, were consolidated. Petitioners ask this court to direct Judge Ishikawa to unseal the records of the pretrial hearing. The P–I also contends that the closure of the pretrial hearing was improper. On this record, for the reasons discussed below, we find that the judge erred in closing the hearing. We emphasize that it is on this record that we find error. We remand the issue of the continued sealing of the records for reconsideration in accordance with this opinion.

I

As noted above, this action arose out of a criminal prosecution. In August 1980, Cynthia Marler was charged with the murder of Wanda Touchstone. Her trial was set for February 1981.

Just prior to trial, Marler's counsel moved to dismiss the charges against her. Counsel also moved to exclude the public from the courtroom while the motion to dismiss was being argued. The prosecutor concurred in this motion to close.

On February 24, 1981, the prosecutor's office notified attorneys for the Seattle Times and the P–I that a motion to exclude the public from the courtroom during the argu-

ment on the motion to dismiss would be presented to the court on the next day. On February 25, defense counsel presented to the court pleadings in support of the motion to close. In the judge's chambers the trial judge, defense counsel and the prosecutor discussed the pleadings and the need for closure. Following these discussions, those parties returned to the courtroom. The trial judge announced that a motion to close the hearing had been made and that he would entertain objections from the press on the issue of closure.

Representatives of the Times and the P–I objected. Without explaining what had been discussed during the in camera session, the trial judge heard argument on the issue of closure. The judge allowed the press to suggest alternatives to closure. For reasons described in detail later in this opinion, the trial judge ruled that the pretrial hearing would be closed.

Argument on the motion to dismiss was heard in closed session on the afternoon of February 25 and the morning of the 26th. Defense counsel presented evidence and argument on its theory of why the case against Ms. Marler should be dismissed. The prosecutor introduced rebuttal testimony and the motion to dismiss was denied. The transcript of the hearing, related pleadings, exhibits and briefs were then sealed.

On March 2 and 3, the jury was selected. Following selection, the press moved to have opened the records of the pretrial hearing of the motion to dismiss. This motion was denied.

The trial commenced on March 5 and concluded on March 11, 1981. The jury convicted Cynthia Marler of murder in the first degree. That conviction is on appeal.

On March 13, the press once again moved to have the records of the pretrial hearing unsealed. Once again the motion was denied. The records and transcript have remained sealed since that time and have been transmitted to this court for review as exhibit X.

A description of the procedures on appeal is necessary to

put the issues in perspective. The King County Prosecutor, representing Judge Ishikawa, made alternative procedural motions. He first asked (1) that exhibit X be made available to all counsel but that petitioners' attorneys be prohibited from disclosing the contents to anyone, including their clients; (2) that the briefs as to the sealed record be filed as sealed matters; and (3) that oral argument relative thereto be closed. The alternative motion requested (1) that the materials in exhibit X remain sealed and unavailable to petitioners; (2) that the prosecutor's brief in reference thereto be sealed; and (3) that the prosecutor alone would present oral argument relating thereto in a closed session with the court.

The P–I moved that the court be limited to consideration only of those matters in the public record, thereby prohibiting access by the court to the contents of exhibit X.

After argument of these motions before the Chief Justice, the Chief Justice referred the motions to the court en banc. After consideration, the court entered the following order:

(1) The respondent's brief shall be an open public record of this Court and shall not be sealed.

(2) The respondent's brief should include statements which identify the interest or interests which respondent contends require protection in this matter, both prior to the trial in King County Cause No. 80–1–03129–1 and at present, and shall include argument relative to those interests.

(3) Exhibit "X" shall remain sealed at this time, subject to review by members of this Court. The respondent's counsel may also review Exhibit "X".

(4) Respondent's counsel's request for closed oral argument is denied at this time.

The matters contained in exhibit X have remained sealed except for review by the court. Defendant Marler's appellate counsel were not trial counsel. We are informed that Marler's appellate counsel have been allowed access to the sealed records. While appellate counsel were appointed on May 11, 1981, they did not move to intervene in these actions until August 12, 1981, oral argument having been

held on June 16, 1981.

## II

Respondent argued that the present mandamus actions were defective because the real parties in interest, Marler and the prosecutor, were not parties. As noted, on August 12, 1981, Marler, herself, filed a motion to intervene.

We reject respondent's argument and deny Marler's untimely motion. Mandamus by an original action in this court is a proper form of action for third party challenges to closure orders in criminal proceedings. *State v. Bianchi,* 92 Wn.2d 91, 593 P.2d 1330 (1979); *Federated Publications, Inc. v. Kurtz,* 94 Wn.2d 51, 615 P.2d 440 (1980). As a general rule those public officials are the only necessary respondents to the action (52 Am. Jur. 2d *Mandamus* § 397), even when others might be affected by the outcome. *State ex rel. Brown v. Warnock,* 12 Wn.2d 478, 122 P.2d 472 (1942). While Marler might have been permitted to intervene earlier (on which issue we do not rule), she waived any such right by waiting over 8 weeks after argument on these petitions to file her request for intervention. Besides, her interests were presented to this court by the respondent in order to justify his acts of closing the hearing and sealing the records thereof.

## III

Petitioners rely upon both federal and state constitutional grounds to justify their right of access to this pretrial hearing. They claim no special right of access but equate their right with that of the public. We have recognized that standing. *Cohen v. Everett City Coun.,* 85 Wn.2d 385, 388, 535 P.2d 801 (1975). Turning to the federal constitution, the Supreme Court recently held in *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 65 L. Ed. 2d 973, 100 S. Ct. 2814 (1980), that the First and Fourteenth Amendments protect the public's right of access to criminal trials. While not specifically addressing whether this right extends to pretrial proceedings, the Court, in part, premised its holding on the following factors:

(1) the tradition of open criminal trials which preceded the drafting of the Bill of Rights;

(2) "the common core purpose" of the rights of press, speech, assembly and petition "of assuring freedom of communication on matters relating to the functioning of government", *Richmond Newspapers,* at 575; and

(3) the specific reference to the right of assembly in the First Amendment.

While these factors might suggest that the *Richmond* rationale applies with equal force to suppression hearings, the Supreme Court has not specifically and definitively so held. Because we rely upon our state constitutional provision, we decline to speculate what might be the substance of a holding by the United States Supreme Court on this precise point.

The Washington Constitution clearly establishes a right of access to court proceedings. It states in part as follows: "Justice in all cases shall be administered openly . . ." Const. art. 1, § 10. This "separate, clear and specific provision entitles the public, and . . . the press is part of that public, to openly administered justice." *Cohen v. Everett City Coun., supra* at 388.

However, it is equally clear that the public's right of access is not absolute, and may be limited to protect other interests. *Richmond Newspapers,* at 580–82; *In re Lewis,* 51 Wn.2d 193, 198–200, 316 P.2d 907 (1957) (juvenile proceedings not constitutionally required to be open); *Federated Publications, Inc. v. Kurtz, supra* at 65 (pretrial hearings may be closed upon showing of some likelihood of prejudice to defendant's fair trial rights). *See also Cohen,* at 388–89.

In *Kurtz,* a newspaper was excluded from a pretrial suppression hearing. The publisher petitioned this court to vacate the closure order and unseal the records. We ruled that the public and press could be excluded from criminal proceedings under certain limited circumstances to protect the accused's Sixth Amendment right to a fair trial.

Closure and sealing in the present case was premised in

part on the protection of the defendant's fair trial rights, as in *Kurtz*. However, Judge Ishikawa restricted public access to protect other interests here, too. Because we believe that closure to protect the defendant's right to a fair trial should be treated somewhat differently from closure based entirely on the protection of other interests, we will expand upon the framework adopted in *Kurtz* to cover such motions.

## IV

Each time restrictions on access to criminal hearings or the records from hearings are sought, courts must follow these steps:

1. The proponent of closure and/or sealing must make some showing of the need therefor. *Kurtz,* at 62. In demonstrating that need, the movant should state the interests or rights which give rise to that need as specifically as possible without endangering those interests.

The quantum of need which would justify restrictions on access differs depending on whether a defendant's Sixth Amendment right to a fair trial would be threatened. When closure and/or sealing is sought to protect that interest, only a "likelihood of jeopardy" must be shown. *Kurtz,* at 62. *See Gannett Co. v. DePasquale,* 443 U.S. 368, 400, 61 L. Ed. 2d 608, 99 S. Ct. 2898 (1979) (Powell, J., concurring). However, since important constitutional interests would be threatened by restricting public access (*Cohen*; *Richmond,* at 988–90), a higher threshold will be required before court proceedings will be closed to protect other interests. If closure and/or sealing is sought to further any right or interest besides the defendant's right to a fair trial, a "serious and imminent threat to some other important interest" must be shown.

The burden of persuading the court that access must be restricted to prevent a serious and imminent threat to an important interest shall be on the proponent unless closure is sought to protect the accused's fair trial right. Because courts are presumptively open, the burden of justification should rest on the parties seeking to infringe the public's

right. *See Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 558–59, 569–70, 49 L. Ed. 2d 683, 96 S. Ct. 2791 (1976). From a practical standpoint, the proponents will often be in the best position to inform the court of the facts which give rise to the alleged need for closure or sealing. For example, the prosecutor in the Marler case had knowledge of matters such as ongoing investigations, safety of witnesses and the possibility that other defendants might be charged. It is alleged that these interests have been served by secrecy in this case.

2. "Anyone present when the closure [and/or sealing] motion is made must be given an opportunity to object to the [suggested restriction]". *Kurtz,* at 62.

For this opportunity to have meaning, the proponent must have stated the grounds for the motion with reasonable specificity, consistent with the protection of the right sought to be protected. At a minimum, potential objectors should have sufficient information to be able to appreciate the damages which would result from free access to the proceeding and/or records. This knowledge would enable the potential objector to better evaluate whether or not to object and on what grounds to base its opposition.

3. The court, the proponents and the objectors should carefully analyze whether the requested method for curtailing access would be both the least restrictive means available and effective in protecting the interests threatened. *See Kurtz,* at 63–64. If limitations on access are requested to protect the defendant's right to a fair trial, the objectors carry the burden of suggesting effective alternatives. If the endangered interests do not include the defendant's Sixth Amendment rights, that burden rests with the proponents.

4. "The court must weigh the competing interests of the defendant and the public", *Kurtz,* at 64, and consider the alternative methods suggested. Its consideration of these issues should be articulated in its findings and conclusions, which should be as specific as possible rather than conclusory. *See People v. Jones,* 47 N.Y.2d 409, 415, 391 N.E.2d 1335, 418 N.Y.S.2d 359 (1979).

5. "The order must be no broader in its application or duration than necessary to serve its purpose . . ." *Kurtz,* at 64. If the order involves sealing of records, it shall apply for a specific time period with a burden on the proponent to come before the court at a time specified to justify continued sealing.

In the Marler case, the issue of the public's right to the information presented at the pretrial hearing was raised three times: at the motion to close the initial hearing, at the motion to unseal the records after the jury was selected, and at the motion to unseal at the conclusion of the criminal trial. We will proceed to analyze the judge's specific actions at each of these stages in light of the aforementioned standards.

V

A. Initial Order To Close and Seal
(February 25, 1981)

 Under the standards derived from *Kurtz,* the proponent of closure must show some "likelihood of prejudice" to the accused's fair trial right, or a "serious and imminent threat to some other important interest." In this case the defendant made her showing of the likelihood of prejudice during the closed session in the judge's chambers. Such an in camera hearing may be proper when the very argument on closure may jeopardize the defendant's right to a fair trial. *Richmond Newspapers, Inc. v. Commonwealth,* 222 Va. 574, 281 S.E.2d 915 (1981).

As a result, however, petitioning newspapers had no idea why the parties requested secrecy. They knew only that a motion to close the hearing had been made. Their lack of knowledge prevented them from making informed objections. For their right to object to have had practical meaning, the court should have informed petitioners of the interests sought to be protected by defendant's motion.

Respondent argued that he could not reveal any information about the in camera session because to do so would have jeopardized the very interests threatened. However,

upon order of this court dated May 6, 1981, respondent identified the following interests which were protected by his February 25 order:

(1) the fair trial rights of defendant Marler;

(2) the ongoing criminal investigation of the murder of Wanda Touchstone; and

(3) the safety of witnesses.

Presumably this public articulation could have been made at the preclosure hearing without endangering these interests. The judge erred by failing to do so.

The consideration of alternatives to closure and sealing was understandably marred because the petitioners did not know what interests needed protection. The burden of coming forward with alternatives to closure was properly placed on the newspapers rather than the defendant because her right to a fair trial was endangered. However, in light of the petitioners' inability to intelligently formulate alternatives, the prosecutor and the court should have also shared the burden of suggesting other effective methods.

It is unclear to what extent the court weighed the competing interests and the alternative methods. The judge only said that

the dissemination . . . of the information adduced at this hearing by the news media would . . . have the effect of depriving the defendant of her Sixth Amendment right to a trial by a fair and impartial jury.

. . .

In addition there are, the Court feels, exceptional circumstances in this case.

Transcript of February 24, 1981, Hearing, at 13–14. The court continued:

I might indicate for the record that the court has already reviewed the matters pertaining to this issue in chambers, and I do feel that this is an exceptional case under exceptional circumstances.

I would also find that any other alternatives to closure are not available in this case, that is practical alternatives as indicated in the Federated Publications v. Kurtz, case.

Other than acknowledging that petitioner–newspapers had covered the murder itself (some 6 months earlier) the court included no other factual findings or legal conclusions in the record.

The court erred in failing to explicitly outline the nature of the interests protected. Its reference to "exceptional circumstances" was clearly inadequate. As previously noted, the statement of interests made in response to this court's May 6, 1981, order should have been promulgated in time for the February 25, 1981, hearing.

The court's legal conclusions were not substantiated by the factual findings. The factual basis for its conclusions regarding the need for secrecy and the suitability of the methods chosen should have been detailed. For example, there is no evidence that the judge considered the actual impact of publicity on potential jurors and the possibility of having a fair trial as was done in *Kurtz*. Before approving the court's closure order in that case, we noted that the judge found that that murder trial had been the repeated subject of publicity, that there had already been one change of venue, and that the homicide was considered "sensational". In contrast, the trial judge in the Marler case seems to have assumed that publishing the information presented at the motion to dismiss would make it difficult or impossible to obtain a fair jury. The fact that the murder prosecution in Marler produced far less publicity than that of *Kurtz,* and that a much larger jury pool was available to the trial judge suggests the opposite conclusion. But regardless of the conclusion reached, the court's underlying findings should have been recorded.

Petitioners suggested the following alternative methods for protecting the allegedly endangered interests: that the hearing be delayed a few days until the jury was sequestered, that the trial venue be changed, or that a careful voir dire screen out biased veniremen. The judge should have made findings outlining why reasonable alternatives would have been ineffective. Instead the court rejected all alternatives in one sweeping, unsupported conclusion. Thus, the

public had no basis for believing that total closure and sealing was the least restrictive method available. They were left to speculate.

The court's order was broad in its application and of indefinite duration. The judge ruled:

> [T]he pretrial hearing dealing with this specific motion of the defendant [will] be closed to the public and news media.
>
> I will further order that the pretrial briefs, together with any affidavits or supporting documents, any testimony or any exhibits which may be made part of the hearing on this motion, will be sealed until further order of this court.

Transcript of February 25, 1981, Hearing, at 14. The following dialogue helped to clarify the duration of the order:

> Mr. Waggoner: . . . I wish some indication whether the court in fact intends the sealing will be permanent in nature or whether it's simply a temporary sealing.
>
> The Court: I anticipate at this point in time, if this is of any value to you, that it would be more permanent than temporary;

Transcript of February 25, 1981, Hearing, at 16.

The order applied broadly to all members of the public and press and imposed secrecy on all information related to the motion to dismiss. Rather than ordering a temporary sealing of the records, subject to a later showing of continued need for total secrecy, the order was to last indefinitely. The judge erred in failing to narrowly tailor the protective restriction on access to suit the specific needs of this case.

### B. Motion To Unseal After Jury Selection
#### (March 3, 1981)

After impaneling the jury, petitioners moved to unseal the record of the February 25, 1981, proceedings on the motion to dismiss. There is no indication that the proponents of continued sealing made any showing of the ongoing need therefor. The petitioners challenged the necessity of secrecy to protect the defendant's fair trial right. That

right could be adequately protected, they argued, by sequestering the jury. Neither the court nor the prosecutor suggested any other alternatives.

In response to petitioners' motion and argument, the court stated in part:

> The Court is satisfied that from the original documents that were filed in regard to the hearing and at the close of the hearing as such that there are still unique circumstances and also to grant the defendant a fair trial in this instance. I am still adhering to that order and I have thus signed the findings of facts and conclusions of law. I feel that it would be absolutely necessary at this point to keep the closure order in effect at least until the closure of the trial and that is what I am ordering at this point.

Transcript of March 3, 1981, Hearing, at 9–10.

The court repeated its earlier error by failing to demonstrate that it had considered the need for continued secrecy. To do this, the court should have articulated factual findings which form the basis for its conclusions regarding the precise interests to be served by keeping the records sealed. It is unclear why the defendant's right to a fair trial would have been affected by public access at this juncture. If this interest were no longer endangered, the proponents would have had to show that access would have created a "serious and imminent threat" to the ongoing investigation and the witnesses' safety. If the defendant's right to a fair trial were still threatened, only a showing of "likelihood of jeopardy" to that interest would have been required to justify some restriction on access.

The court again failed to show that it considered all reasonable alternatives to total secrecy. Petitioners' suggestion, that the court sequester the jury, would have substantially eliminated the danger of prejudice from publicity. The court should have entered findings why this and other reasonable alternatives would have failed to protect the defendant's fair trial right, the integrity of the ongoing investigation and the witnesses' safety.

## C. Motion To Unseal After Trial
### (March 13, 1981)

After the trial had been completed, petitioners again moved to unseal the records. They pointed out to the court that defendant's fair trial would no longer be threatened by prejudicial publicity.

The defense reiterated its earlier position in favor of secrecy. Together with the prosecutor, they alleged only that the same factors justifying secrecy continued, without any further specification.

The court ruled as follows:

Originally when this motion to close the hearing on this particular issue was brought, Mr. Hill and Mr. Waggoner had the opportunity to argue the propriety of the closure. During the course of the trial, the Seattle Times and the Seattle P–I, through Mr. Hill and again Mr. Waggoner, moved to open the sealed records. On both of those occasions I indicated to counsel that basically there were two reasons for the sealing and closure order and that was:

One, the constitutional right of Miss Marler to have a fair trial and, secondly, the reason of exceptional circumstances in the case and the uniqueness of the reasons for the closure. To some extent those two reasons have changed insofar as I believe the first reason I gave, which would be a fair trial itself in view of the verdict of the jury, that is somewhat eliminated; however, the same "exceptional circumstances" and the uniqueness of the circumstances in this case requires me to adhere to my former order [that] the records and files on this specific hearing continue to remain in that state.

I appreciate the news media's concern, [its] attempts to argue basically in a vacuum when they don't know the substance of what took place. I believe that the hearing itself, if it were to be reviewed by the Appellate Court or the Supreme Court, would make it quite clear the basis for my ruling . . .

Transcript of March 13, 1981, Hearing, at 10–11. Counsel for the Times later asked: "I take it we should assume at this point there is no longer a need to keep coming before the court requesting unsealing of these records?" The judge replied: "I would say so."

Once again the judge failed to indicate that he had weighed the relevant interests. Because the court accepted the conclusory allegations of the prosecutor rather than determining for itself the sufficiency of the need for continued secrecy, it erred.

There are a variety of less restrictive alternative methods for effectively protecting the additional interest asserted after trial. Any future defendants could request a continuance, severance, or change of venue to insure that their trials would be fair. In addition, all of the interests allegedly protected by denying the newspapers' March 13 request would not have been seriously threatened if the records were sealed for a definite rather than an indefinite period. Regardless of the means the court eventually chose, it erred in failing to demonstrate that it considered any alternative to permanent total secrecy.

■ The active role of the court in managing closure motions warrants reiteration. When a perceived clash between a defendant's fair trial right and the right of free speech arises, courts have an affirmative duty to try to accommodate both of those interests. Therefore, rather than engage in idle "balancing", it is our hope that careful judicial craftsmanship will help preserve "two of the most cherished policies of our civilization". *Bridges v. California,* 314 U.S. 252, 260, 86 L. Ed. 192, 62 S. Ct. 190 (1941) (Black, J.). *See Kurtz,* at 68–73 (Dolliver, J., dissenting).

Review of the contents of the sealed record reveals that the trial judge was faced with extremely difficult problems. It may be that the closure and temporary sealing were proper. The difficulty is that this record prevents an appellate court from any meaningful review of the trial court's actions since we only have the conclusions, not the rationale or critical factual findings of the trial court.

We remand this matter to the respondent's court to reconsider petitioners' motion to unseal in accordance with

the standards expressed herein.

ROSELLINI, STAFFORD, and WILLIAMS, JJ., and HUNTER, J. Pro Tem., concur.

DOLLIVER, J. (concurring)—I concur fully with the analysis and result of the majority. One further comment is, I believe, important. As noted by the majority, the interests to be protected by the secrecy order were:

(1) the fair trial of defendant Marler;

(2) the ongoing criminal investigation of the murder of Wanda Touchstone; and

(3) the safety of witnesses.

A limited secrecy order, under the standards articulated by the majority might well be appropriate to protect interests (1) and (2). It would not be appropriate to protect interest (3). It is not the business of courts through pretrial secrecy orders to provide "protection" for witnesses or parties. To hold otherwise would put the courts in an impossible position: Fail to issue a secrecy order and if the witness or party is injured or killed it is the fault of the court.

The safety or life of a witness or a party to an action is the responsibility of law enforcement agencies. It is not properly done by courts through the use of secrecy orders. Once the argument to the contrary is accepted, any vitality in an open judicial system is destroyed.

If the unavoidable circumstances are indeed such that a witness or a party to an action must be protected, then this must be accomplished by appropriate police action and not by the closure of the court. If, on the other hand, the circumstances which brought about the alleged threat to safety or life were brought about by actions of the prosecution or the defense subsequent to the crime then notice should be given that such actions will not result in approval of a secrecy order by the court.

UTTER, J., concurs with DOLLIVER, J.

DORE, J. (concurring)—I concur in the excellent opinion

of Brachtenbach, C.J. I feel, however, that the statement, "When a perceived clash between a defendant's fair trial right and the right of free speech arises, courts have an affirmative duty to try to accommodate both of those interests" should be clarified.

Where the public's right to openly administered justice does not infringe on the defendant's constitutional right to a fair trial, the above statement is a correct assessment of the court's responsibility. *See Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 65 L. Ed. 2d 973, 100 S. Ct. 2814 (1980). But where the public's right to open proceedings cannot be accommodated without infringing upon the defendant's constitutional due process rights, the defendant's rights *must* be preserved. *See Gannett Co. v. DePasquale,* 443 U.S. 368, 378–79, 61 L. Ed. 2d 608, 99 S. Ct. 2898 (1979); *Federated Publications, Inc. v. Kurtz,* 94 Wn.2d 51, 55, 615 P.2d 440 (1980); *Richmond Newspapers,* at 581 n.18. The First Amendment rights of the public and representatives of the press are *not* absolute, and must surrender to the defendant's fair trial rights where both cannot be accommodated.