IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                Respondent,<br><br>        v.<br><br>FAN ZHANG,<br><br>                Appellant. | No. 84461-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, A.C.J. — Fan Zhang was found guilty of rape in the second degree by forcible compulsion following a jury trial. Prior to the initiation of the criminal case, the victim, J.W., filed a civil suit for damages against Zhang individually and their shared employer, Futurewei Technologies Inc. Futurewei and J.W. reached a settlement agreement and further agreed to dismiss the civil case prior to the start of the criminal trial. Zhang assigns error to a number of rulings in his criminal case related to the civil settlement agreement and presents constitutional challenges arising from those rulings. He also asserts that the prosecutor committed misconduct during closing argument and, in a supplemental brief, that the trial court violated the appearance of fairness doctrine. While the trial court erred in its conclusion that the settlement agreement was inadmissible and in sealing the document without conducting a hearing or applying the factors under *Seattle Times Co. v. Ishikawa*,[1] such error was harmless and we affirm.

---

[1] 97 Wn.2d 30, 640 P.2d 716 (1982).

FACTS

On April 5, 2019, J.W. and Fan Zhang attended an off-site going away party for a coworker at Futurewei. When they left the party, Zhang drove J.W.'s vehicle, as she had consumed alcohol during the event. After dropping off another colleague at their office, they drove to J.W.'s residence before returning to the office.[2] J.W. alleged that Zhang raped her at her apartment, first dragging her on top of him while he was sitting on the couch, then carrying her to the bedroom where he digitally penetrated her. Zhang denied these accusations and later provided a competing version of events. J.W. did not disclose the incident immediately, but when she finally told her then boyfriend, he encouraged her to report it to both Futurewei and law enforcement.[3] However, J.W. retained private counsel before she made her report to police. After receiving an internal complaint from J.W., Futurewei hired an attorney to conduct an independent investigation about her claims. The investigator applied a preponderance of the evidence standard and concluded that the incident did not occur as reported. The Bellevue Police Department conducted a separate investigation, but much of its communication with J.W. was filtered through her counsel in the civil suit for damages.

The State ultimately filed one count of rape in the second degree by forcible compulsion against Zhang on August 26, 2020. During motions in limine, Zhang

---

[2] At trial, Zhang and J.W. offered different reasons for the stop at J.W.'s apartment. Zhang stated that they went to the apartment to retrieve J.W.'s present for the departing coworker. J.W. stated that Zhang told her she "was not in a good condition to work" and that she "should go back home in the car that day and just rest."

[3] J.W. and her partner had married by the time of trial.

sought admission of the amount J.W. received from the settlement of the civil suit on the basis that it would demonstrate J.W. had fabricated the allegations in a gambit to extract money from Zhang. Following in camera review of the agreement, the judge ruled that "[n]o part of the settlement agreement is relevant or admissible" and for it to be "resealed" pursuant to GR 15. Trial was conducted in late June and early July 2022. In the opening statement for the defense, Zhang's counsel alleged that J.W. had a financial motive for her testimony. Zhang continued to seek admission of the settlement agreement throughout trial, but the judge repeatedly referenced the prior ruling and denied those subsequent requests. Zhang was convicted as charged on July 12 and, on September 9, 2022, the judge imposed a low-end indeterminate sentence of 78 months to life in prison.

Zhang timely appealed. He then filed a motion in this court, seeking remand and an order for the trial court to grant his access to the settlement agreement or, in the alternative, unseal it. A commissioner of this court denied the motion, noting that Zhang was free to file a motion to unseal in the trial court. Zhang then filed a motion to modify the commissioner's ruling, which was denied by a panel of this court. Zhang next filed a motion for remand and further proceedings pursuant to RAP 9.11, specifically requesting assignment to a different trial court judge. That motion for remand was stayed in this court pending the outcome of a number of motions Zhang had filed in the trial court in October 2023, including a motion to unseal the settlement agreement and for discovery that expressly sought disclosure of the communication between the prosecutor, J.W.'s civil attorney, and the trial judge regarding obtaining the settlement agreement for in camera review.

Zhang's motions in the trial court were denied in part, granted in part, and after additional briefing, the trial court unsealed the settlement agreement and entered findings after applying the factors set out in *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982). Zhang then designated the postconviction pleadings and orders for the record on appeal and submitted a supplemental assignment of error after a commissioner of this court lifted the stay.

ANALYSIS

I.     Settlement Agreement between J.W. and Futurewei

Most of Zhang's assignments of error center on the trial court's various rulings regarding the settlement agreement between Futurewei and J.W. that resulted in a stipulated dismissal of the civil suit. J.W. received a substantial payment from this settlement for "emotional distress damages on account of alleged bodily injury as well as attorney fees and costs," contingent only upon J.W. providing Futurewei an IRS form W-9 and ensuring dismissal of the lawsuit with prejudice within five business days of receipt of payment. Despite the fact that he was expressly named as a defendant in the civil suit and is referred to in the written agreement as a "third party beneficiary" of the settlement, Zhang was not a party to the negotiations in the civil suit nor did he receive a copy of the final settlement agreement.

Zhang's theory of the defense was that J.W. had a financial motivation to fabricate the allegations against him and, toward that end, his attorneys openly speculated that payment of the settlement amount was contingent upon J.W.'s cooperation with the prosecution in the criminal case. Accordingly, the agreement

was a key piece of evidence for the defense. On appeal, Zhang assigns error separately to the court's denial of his motion for the State to produce the settlement agreement, determination that the agreement was not admissible, and sua sponte order to seal the settlement agreement without conducting a hearing or analysis of the *Ishikawa* factors.

A.      State's Duty To Disclose Evidence in Its Possession or Control

The State has a duty under the criminal rules to disclose certain material to the defendant. CrR 4.7. This duty is "limited to material and information within the knowledge, possession, and control" of the prosecutor's office. CrR 4.7(a)(4). The duty continues through the duration of trial; if "a party discovers additional material or information which is subject to disclosure," the other party must be notified of its existence. CrR 4.7(h)(2). If such a discovery of disclosable evidence occurs during trial, the court must be notified as well. *Id.* We review the denial of a discovery motion based on CrR 4.7 for abuse of discretion. *State v. Vance*, 184 Wn. App. 902, 911, 339 P.3d 245 (2014). An abuse of discretion has occurred when a trial court "makes decisions on untenable grounds or for untenable reasons." *Id.*

Zhang engaged in extensive pretrial litigation which included a motion to compel other evidence and, later, a written motion for the admission of J.W.'s prior complaints against other coworkers and the amount she received under the terms of the settlement agreement. At oral argument before this court, Zhang's counsel clarified that the request to produce the agreement underlying this assignment of error was an oral motion made in the midst of a discussion of the settlement

agreement in a hearing on those other written motions.[4]  The record suggests that the State was not in possession of the settlement agreement; the prosecutor noted that J.W. had civil counsel on that matter and the court directed him to "make inquiry of the attorney" to obtain a copy of the agreement so that it could conduct an in camera review.  A few days later, the defense revisited the issue of the in camera review and the court expressly directed the prosecutor to obtain a copy of the agreement for the court stating, "I just need to get a copy of that document, so that is going to be your responsibility to get that to me as soon as possible."  The prosecutor responded, "Absolutely, your honor," but did not indicate whether he would be obtaining it from J.W.'s civil counsel or if it was already in the State's possession.  The parties appear to agree that the State ultimately complied with the court's order and provided the settlement agreement as the judge issued an order on in camera review and sealing on July 1, 2022.

As a preliminary matter, the prosecutor complied with CrR 4.7 with regard to the settlement agreement.  More critically, the court never denied a motion for the State to disclose the agreement because the only statement by the defense in the transcripts of pretrial proceedings that could be construed as an oral motion occurred immediately prior to the discussion of in camera review.  One of Zhang's attorneys was addressing his written motion to admit the amount of the settlement agreement and, after asking the court for a moment to confer with co-counsel, said, "So I think we can't really resolve this issue unless the court rules that we should—

---

[4] Wash. Ct. of Appeals oral arg., *State v. Fan Zhang*, No. 84461-0-I (Sept. 11, 2024), at 4 min., 28 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?clientID=9375922947&eventID=2024091199.

can even get a copy of the settlement agreement." After discussing how the agreement could support the defense claim of financial motive to lie, the following exchange occurred:

> THE COURT: Do you want me to review it in camera to see if—
>
> MR. BROWNE [Defense counsel]: Yes.
>
> THE COURT: —it requires that she—
>
> MR. BROWNE: We will abide by whatever ruling you make.
>
> THE COURT: All right.

Cross-talk aside, it is clear that defense counsel's initial oral request for the court to rule that the defense could obtain a copy of the settlement agreement was modified by this later acceptance of the court's offer of in camera review and explicit assurance that the defense would "abide by whatever ruling you make." On this record, Zhang fails to demonstrate error under CrR 4.7.

B.      Erroneous Ruling on Admissibility

Zhang next contends the judge erred in the determination after in camera review that the settlement agreement was inadmissible. We agree. Trial court rulings on the admission of evidence are reviewed for abuse of discretion. *State v. Jennings*, 199 Wn.2d 53, 59, 502 P.3d 1255 (2022). The trial court has abused its discretion if it misinterprets the law or if "'no reasonable person would adopt the ruling of the trial court.'" *Id.* (internal quotation marks omitted) (quoting *State v. Atsbeha,* 142 Wn.2d 904, 914, 16 P.3d 626 (2001)). When determining the relevance of evidence, a trial judge considers whether the evidence has "any

- 7 -

tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Evidence that is relevant can still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403.

Operating alone, ER 403 does not require that the weighing of probative value against potential prejudice occur on the record. *Compare State v. Jackson*, 102 Wn.2d 689, 693, 689 P.2d 76 (1984) (noting that the "balancing of probative value versus prejudice should be done on the record" in the context of ER 403 in relation to ER 404(b)), *with Stave v. Gould*, 58 Wn. App. 175, 184, 791 P.2d 569 (1990) ("We are unwilling to extend the balancing requirement to evidentiary objections and claims of error based on ER 403 alone."). "The burden of showing unfair prejudice is on the party seeking to exclude the evidence." *State v. Burkins*, 94 Wn. App.677, 692 973 P.2d 15 (1999).

Before viewing the settlement agreement or ruling on its admissibility, the trial judge questioned Zhang as to why the amount received from the settlement would be probative of J.W.'s alleged financial motive to lie:

> THE COURT: Well, I don't understand, Mr. Browne, how it goes to her motive when [the settlement] has already happened? I mean, she is not going to get on the stand and lie because she has a potential—you know?
>
> MR. BROWNE: That's a good question. I think you would write—unless the settlement agreement said that she had to continue with the prosecution, which I believe it does. But we don't know. It is sealed [in the civil case].
> . . . .

- 8 -

        MR. BROWNE: Ms. Bremner [Defense counsel] just reminded
me, a financial bias is still a bias.

The State did not object to the admissibility of the settlement agreement or the settlement amount, or otherwise articulate any possible prejudice that could result from the admission of this evidence. As previously recounted, Zhang expressly assented to the trial court's proposal to conduct an in camera review of the settlement agreement. After the court obtained and reviewed the settlement, it issued a sparse order that simply concluded "no part of the settlement agreement is relevant or admissible."

While the trial court was not required to expressly weigh the probative value of the settlement agreement against the possibility of prejudice on the record, the sparse order was erroneous for two reasons. First, in the absence of direct physical evidence of the charged crime, any evidence that could be used to impeach J.W. would be highly probative. This case hinged on credibility; only J.W. and Zhang had direct knowledge of what actually happened in her apartment on the day in question and the jury was tasked with deciding which version of events was true. The terms of the settlement of J.W.'s suit against Futurewei and Zhang would have provided the defense with useful material for impeachment; a concrete number presented to the jury may have been more impactful than vague aspersions if Zhang sought to emphasize a theory premised on a financial motive to lie. Second, there was very little risk of prejudice to the State by admission of the settlement agreement, particularly in light of the court's ruling that J.W. could be examined about the facts of the suit and negotiations, and existence of a settlement. In the context of ER 403, evidence is unfairly prejudicial if it will "arouse

an emotional response" and lead jurors away from a "rational decision." *State v. Rice*, 48 Wn. App. 7, 13, 737 P.2d 726 (1987). Admission of the settlement agreement may have led the jury to view J.W. differently, but that is exactly why the evidence had such high probative value for Zhang. The State did not present any argument as to why the admission would be unfairly prejudicial, even when it would have had the burden of doing so. However, that is likely because the court appears to have ruled on the admissibility of the settlement agreement without hearing further argument from the parties, so it is unclear from this record if the State actually opposed its admission.

Thus, because the settlement agreement had great probative value and carried minimal risk of unfair prejudice, and because we have no discernible reasoning from the trial court to suggest otherwise, we conclude that the court misapplied the test for relevance. However, when a trial court abuses its discretion as to an evidentiary ruling, such error may be harmless.[5]

To prevail on a claim of nonconstitutional error, the defendant must "demonstrate that 'within reasonable probabilities . . . the outcome of the trial would have been materially affected' had the error not occurred." *State v. Barry*, 183 Wn.2d 297, 317-18, 352 P.3d 161 (2015) (alteration in original) (internal quotation marks omitted) (quoting *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)). On this record, Zhang cannot meet his burden to establish reversible error. Despite the beliefs of defense counsel during pretrial litigation and the trial itself,

---

[5] Because we have determined that the settlement agreement was admissible, we need not analyze Zhang's separate argument that J.W. opened the door to its admission during direct examination.

now that the agreement is unsealed, it is clear that it does not contain any provisions particularly beneficial to the defense. It did not require J.W. to testify or otherwise cooperate with the prosecution in order to receive the settlement amount. There was no information in the agreement about the amount of J.W.'s original claim for damages and the final settlement amount was significantly less than the $900,000 defense counsel told the court they believed J.W. had demanded. Zhang's counsel also plainly retreated from their initial contention that they wanted the jury to hear the amount of money J.W. received, so while the final settlement amount was contained in the agreement, the defense expressly and repeatedly advised the court that it did not want that figure admitted. Zhang was able to develop the theme that J.W. had financial motivations for the allegations she had made against him. Critically, he identifies no information in the agreement that would have strengthened his defense, particularly given the plain statements of counsel about the information they wanted before the jury. Thus, Zhang has not shown that there was a reasonable probability that the erroneous ruling to exclude the settlement agreement materially affected the verdict.

C.    Sua Sponte Sealing in Violation of *Ishikawa*

When the court offered to conduct in camera review of the document, defense counsel interrupted the judge and responded, "Yes. . . . We will abide by whatever ruling you make." The State indicated that it wanted "some time to just make a proper argument before the court before we decide the next steps." However, the court did not conduct a hearing on sealing under *Ishikawa*, but simply sua sponte ordered the settlement agreement sealed after its review without input

from the parties and without making the required findings. Zhang assigns error to the order sealing and argues it violates both his right to the "open administration of justice" and the plain language of GR 15. He is correct.

This court reviews a trial court's decision to seal or unseal for abuse of discretion. *State v. Richardson*, 177 Wn.2d 351, 357, 302 P.3d 156 (2013). If the trial court has applied the incorrect legal standard or analysis, or fails to apply any at all, this court "remands to the trial court to apply the correct legal rule." *Id.* The trial court should enter findings on the record that support its ruling on sealing. *Dreiling v. Jain*, 151 Wn.2d 900, 907, 93 P.3d 861 (2004). In a criminal case, when a trial court considers a request to seal or unseal a document, it should apply both the *Ishikawa* factors and GR 15(e)(2). *Richardson*, 177 Wn.2d at 359.

In *Ishikawa*, our Supreme Court relied heavily on *Federated Publications Inc. v. Kurtz*, 94 Wn.2d 51, 615 P.2d 440 (1980), and provided guidance on the process a trial court must employ when a party has requested a record be unsealed. First, "[t]he proponent of closure and/or sealing must make some showing of the need therefor." *Ishikawa*, 97 Wn.2d at 37. Second, it is the trial court's responsibility to ensure there is an opportunity for objections; "'[a]nyone present when the closure [and/or sealing] motion is made must be given an opportunity to object to the [suggested restriction].'" *Id.* at 38 (some alterations in original) (quoting *Kurtz*, 94 Wn.2d at 62). Third, the trial court and the interested parties "should carefully analyze whether the requested method for curtailing access would be both the least restrictive means available and effective in protecting the interests threatened." *Id*. Fourth, the trial court needs to "'weigh the

- 12 -

competing interests of the defendant and the public' and consider the alternate methods suggested." *Id*. (quoting *Kurtz*, 94 Wn.2d at 64). Fifth, the trial court must consider if the time period where sealing was prudent has passed; a sealing order cannot be broader than the purpose it aims to achieve. *Id.* at 39.

GR 15(e)(2) sets out the procedure for a trial court deciding a motion to unseal: there must be a showing of compelling circumstances and notice must be given to the appropriate parties. In a criminal context, notice must be given to all parties, as well as the victim. GR 15(e)(2), (c)(1).

Here, the issue of sealing was raised and decided sua sponte without providing interested parties the right to be heard on the matter as required by GR 15 or engaging in an analysis under the *Ishikawa* factors. Zhang asserts, without citation to any source, that the trial judge in his criminal case also presided over J.W.'s civil suit against Futurewei and Zhang, and expresses concern over such "unusual circumstances." References in the transcripts of various hearings suggest that the agreement was filed under seal in the civil case: Zhang's attorney directly asserted as much when he requested that it be produced, and later in the discussion of in camera review, the judge said, "I'm sure [J.W.'s] attorney will know that an in camera review means strictly confidential and it will be *resealed* upon my review." (Emphasis added.) While this phrasing by the judge, specifically the reference to resealing, could admittedly suggest knowledge of the civil case that goes beyond what is present in the record of the criminal case, it could also be interpreted as her acceptance of defense counsel's earlier assertion that the settlement was filed under seal in the civil case and that Zhang could not access

it without the court's intervention. Further, Zhang's contention about the judge presiding over both the civil and criminal cases appears to go to the request in his opening brief for remand to the trial court with instructions to either grant him access to the settlement agreement or unseal it. As it has already been unsealed by the trial court, we need not consider or further analyze this argument. However, of greater concern to this court is the fact that the order sealing does not contain any findings but only a simple conclusory statement that the "document is not public and will now be sealed pursuant to GR 15 so it is part of the record in the criminal case."

The State asserts in briefing that invited error prevents review of this claim on appeal. At oral argument before this court, the State averred that Zhang's assent to the trial court's ruling amounted to invited error, if not waiver, and claimed for the first time that the trial court adequately weighed the relevant interests.[6] We disagree that the court's interpretation and application of the requirements under *Ishikawa* and GR 15 was proper or adequate. As a preliminary matter, during the postconviction litigation on the settlement agreement the court expressly stated, "Because the agreement had a confidentiality clause, the court ordered it sealed." It is unclear how this reasoning, which is more expansive than that laid out in the original order sealing, could possibly comport with the requirements of *Ishikawa* and GR 15.

One of the essential functions of an *Ishikawa* hearing is to consider the interests of *all* parties, which here, includes not only Zhang and the State, but also

---

[6] Wash. Ct. of Appeals oral arg., *supra*, at 14 min., 18 sec.

J.W. and Futurewei as the signatories to the settlement agreement.  While Zhang may invite or waive an error, that can go to only his own interests and the *Ishikawa* factors expressly require trial courts to protect the interests of other involved parties *and the public* before deciding to seal.  The *Ishikawa* court emphasized the rights of the public and those of an accused person, noting that

> since important constitutional interests would be threatened by restricting public access, a higher threshold will be required before court proceedings will be closed to protect other interests.  If closure and/or sealing is sought to further any right or interest besides the defendant's right to a fair trial, a "serious and imminent threat to some other important interest must be shown."

97 Wn.2d at 37 (internal citations omitted).  The State offers no argument on the question of how Zhang could waive the rights of others in the context of sealing a document in the court file, and the record does not suggest that the trial court considered, much less weighed, the interests of J.W., Futurewei, or the public, or otherwise applied the second and fourth *Ishikawa* factors.  The record is similarly silent as to any notification to J.W. or Futurewei as required by GR 15(e)(2) and (c)(1).  There is no indication in the court's order that it considered less restrictive means for curtailing access to the settlement agreement under the second *Ishikawa* factor or contemplated the duration of the sealing order under the fifth factor so that it was not broader than necessary.  Finally, as the decision to seal was made sua sponte, it is unclear how the court could have upheld the burden of proof set out in the first *Ishikawa* factor.  Our Supreme Court was clear in *Ishikawa* that "[b]ecause courts are presumptively open, the burden of justification should rest on the parties seeking to infringe the public's right."  97 Wn.2d at 37-38. Failure to apply the burden of proof set out in controlling case law, because it acted

- 15 -

independently of any request from interested parties, separately demonstrates that the trial court misapplied the law. The only conclusion that can be reached on this record is that the court's decision to seal the settlement agreement was an abuse of discretion due to the complete failure to apply *Ishikawa* or GR 15.[7]

However, this clear error by the trial court was harmless as the only information contained in the agreement itself that was not explored during either direct or cross-examination of J.W. was the amount of the actual settlement, which Zhang expressly and repeatedly said he did not want admitted. Again, "[a] nonconstitutional error such as this one is harmless if it did not, within reasonable probability, materially affect the verdict." *State v. Walters*, 162 Wn. App. 74, 84, 255 P.3d 835 (2011). Thus, because Zhang was able to both explore and argue J.W.'s potential financial motive to fabricate the allegation and the fact of the civil settlement, he fails to establish that admission of the actual agreement would have materially altered the verdict. Zhang's attorneys plainly centered this theory from opening statements through cross-examination of J.W. and in closing argument. Further, as noted *supra* in Section I.B, Zhang does not identify what information in the agreement itself was so key to his defense that the outcome of trial would have been different. Again, while he had speculated that payment of the settlement amount was contingent on J.W.'s testimony at trial, after unsealing pursuant to the postconviction litigation in the trial court, it is clear that the agreement contained no such conditions. The only terms of payment were that J.W. provide an IRS form

---

[7] Critically, the trial court's order unsealing the settlement agreement that was entered pursuant to the postconviction litigation includes six pages of findings of fact and conclusions of law including, notably, that J.W. was given "several opportunities to respond" to Zhang's motion to unseal, among other clear examples of robust application of the *Ishikawa* factors

W-9 to Futurewei's counsel within five business days of signing the agreement and file the stipulated dismissal with prejudice in the civil case. If anything, this additional information could have undercut Zhang's theory about a motive to lie at trial in order to collect the settlement amount. Zhang has failed to demonstrate entitlement to relief on this assignment of error.[8]

II.     Constitutional Claims Premised on Admissibility Ruling

Zhang presents two separate but related claims of violation of his constitutional rights based on the ruling that the settlement agreement was not admissible. He specifically avers that it burdened his right to present a defense by curtailing his ability to develop the defense theory that J.W.'s allegations were motivated by financial interests and violated his confrontation right because he could not cross-examine J.W. about the settlement with Futurewei. We disagree and conclude that Zhang's defense was neither impermissibly hampered, nor was he prevented from confronting an adverse witness.

A.     Right To Confront an Adverse Witness

The confrontation clause of the Sixth Amendment to the United States Constitution requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against [them]." U.S. CONST. amend. VI. Crucial to the right to confrontation is "meaningful cross-examination of an adverse witness." *State v. Chicas Carballo,* 17 Wn. App. 2d 337, 346, 486

---

[8] In his opening brief, Zhang also claimed that the court's ruling on sealing the agreement separately violated his right to appeal, but he concedes in his reply brief that after the court unsealed it pursuant to the postconviction litigation, that issue is moot. Accordingly, we decline to reach this assignment of error.

P.2d 142 (2021). We review "general limitations on the scope of cross-examination for abuse of discretion." *Id.* at 345. "'[T]he more essential the witness is to the prosecution's case, the more latitude the defense should be given to explore fundamental elements such as motive, bias, [or] credibility.'" *Id*. at 346 (alterations in original) (quoting *State v. Darden*, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002)).

Here, J.W.'s testimony was essential to the State's case. She was the only adverse witness who could offer a first-hand account of the events that occurred in her Bellevue apartment. Zhang had grounds to argue that J.W.'s allegations were fabricated and motived by financial interests and her testimony against him was biased for that reason. However, this assignment of error is simply unsupported by the record. In fact, the transcripts from the trial court affirmatively demonstrate that the only limitations on Zhang's cross-examination of J.W. about the civil suit and settlement came from his own counsel based on their trial strategy. For example, just prior to opening statements, outside the presence of the jury, the court returned to the topic of the civil suit and settlement. The State made clear that it was not opposed to examination of J.W. on the fact of the civil suit and settlement, and argued only that the settlement amount had previously been excluded at the request of defense counsel. After the State clarified its position, the court expressly ruled, "All right, then that motion is granted." Counsel for Zhang sought clarification and the judge responded, "The motion is granted, Ms. Bremner. The motion you are making" and counsel then thanked the court. To be clear, the motion had been articulated by defense counsel as follows:

- 18 -

MS. BREMNER [Defense counsel]: [M]y position is that there are some other things that I think should come in and . . . also under ER 611 I think that the financial motive, and I know you have ruled on this but I wanted to kind of revisit it before we get to the openings and into the evidence . . . what we could get into in terms of her filing a lawsuit, having this investigation, etc.?

Under ER 611 on cross-examination, as the court is well aware, we have an absolute right to inquire into bias about a witness.

THE COURT: Um-hum?

MS. BREMNER: And of course, the court can limit the scope.

THE COURT: Um-hum?

MS. BREMNER: In this case, this complainant sued asking for $900,000 in this case.

. . . .

[T]he fact that she has a financial bias I submit to the court—I know the court said, ["]Well, financial bias is over because she got paid,["] or settled, or whatever, but the financial bias from the very beginning still remains.

The reason she filed a claim was financial, and I think we are entitled to show the jury that, or bias, on cross-examination, that she filed a complaint, legal complaint; she made a claim and she wanted money.

THE COURT: So she made a claim against the company, not Mr. Zhang personally?

MS. BREMNER: Understood, but the fact is it is based only on his conduct.

. . . .

My point is really simple, but it really hit me this weekend: That financial bias was from the get-to with her and it is true today.

Oh, I have got—no, actually she sued both the company and [Zhang] so he was a defendant in the claim about him.

But my point is she had a financial motive to sue and to make a claim and hire and lawyer and everything else.

THE COURT: Um-hum?

MS. BREMNER: That doesn't change—nothing has changed. The fact that she got paid doesn't matter. That financial motive was there from the inception of her complaint and we should be allowed

to tell the jury she had a bias in this case; she had a motive to file this case and it was financial.

. . . .

How about that big money one? I mean $900,000? Whether you talk about the amount or not, that that gives somebody a financial motive to pursue something is static; it remains the same from back then to right now and—

. . . .

MS. BREMNER: Mr. Browne is reminding me, we don't want the amount of the settlement in, but we definitely want in the fact that she made a claim and it was financial.

THE COURT: Okay.

This was the motion that was before the court when the judge said, "The motion is granted, Ms. Bremner. The motion you are making." Zhang had previously been permitted to discuss the existence of the civil suit and did so in his opening statement. He had the ability to explore the civil suit as a potential financial motivation for J.W. making a report to police and participating in the criminal trial, and the impact of that alleged financial motivation on J.W.'s credibility. However, the record also establishes that Zhang simply failed to comprehensively explore the details of the civil suit, settlement negotiations, the amount of J.W.'s initial demand, or other related topics.

During cross-examination Zhang was permitted to ask J.W. questions about the lawsuit and could have developed his theory of financial motivations further, but did not pursue it. The defense began its exploration of this theme at the start of J.W.'s cross-examination:

[MS. BREMNER]: You sued our client and you sued the company, isn't that right?

[J.W.]: That's what eventually happened, but that was not my intention.

MS. BREMNER: I move to strike that latter part, your honor, as nonresponsive.

[MS. BREMNER:] The only question is whether you sued the company and [Zhang]? Right?

[J.W.]: Yes.

[MS. BREMNER]: Okay, and your lawyer is Becky [Roe], right?

[J.W.]: Correct.

[MS. BREMNER]: Yes?
And you made a demand for a certain amount of money, didn't you?

MR. BRYANT [Prosecutor]: Objection, your honor.

THE COURT: Sustained.

MR. BRYANT: Motions in limine.

MS. BREMNER: Your honor, could we have a sidebar on this?

THE COURT: Yes.

MS. BREMNER: About the amount.

After the conference at sidebar, defense counsel changed topics and began to inquire about J.W.'s text communications with a friend to whom she disclosed the assault, asking about specific texts that she wrote:

[MS. BREMNER:] You said, "After all my boss has money, power and can give what I want, material wise."
You wrote that, didn't you?
Yes?

[J.W.:] Yes.

[MS. BREMNER:] Okay, and your boss was [Zhang]?

[J.W.:] Um-hum.

[MS. BREMNER:] Is that right?

[J.W.:] Yes.

Later, outside the presence of the jury, the earlier sidebar discussions were put on the record. The court recounted that defense counsel argued J.W. had opened the door to broader examination on the civil suit by answering that it was not her intention to sue Zhang or Futurewei. However, the court noted "that section was stricken *at defense's request*, so my ruling was that no, that is not allowed." (Emphasis added.) Defense counsel then argued that J.W. had made a demand for $900,000 in her civil suit, referenced the in camera review of the settlement agreement, and again asserted this was evidence of bias under ER 611. The court responded to Zhang's argument by explaining, "I have ruled on this three times and my ruling remains the same. It is not coming in."

When read as a whole, this portion of the trial transcript suggests that the parties were once again talking about admission of the settlement agreement itself. However, there is no reference to any demand by J.W., much less one for $900,000, in the agreement. Nowhere in the transcripts of any pretrial hearing or evidentiary ruling during trial did the parties discuss preclusion of examination on the settlement negotiations or J.W.'s demand in the civil suit. A comprehensive review of the record undermines Zhang's claim that he was prohibited from exploring these topics. While the trial judge excluded the amount J.W. ultimately received under the settlement, this was because Zhang expressly and repeatedly stated he desired that limitation. Because this restraint on the topics explored during testimony came directly from Zhang's own trial strategy, there is no confrontation violation.

B.      Right To Present a Defense

Zhang separately asserts that the purported limitations on the scope of cross-examination violated his constitutional right to a fair trial by impairing his ability to offer testimony in his defense.  For the same reasons set out *supra* in Section II.A, this challenge also fails.  In *State v. Ritchie*, 24 Wn. App. 2d 618, 629-31, 520 P.3d 1105 (2022), we traced the history of the right to present a defense back to the United States Supreme Court's opinion in *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).  *Chambers* provides that the due process rights of defendants are, "in essence, the right to a fair opportunity to defend against the State's accusations." 410 U.S. at 294.  The *Chambers* court rooted these due process rights in the Sixth Amendment.  "The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process."  *Id*.  "This court reviews general limitations on the scope of cross-examination for abuse of discretion."  *Chicas Carballo*, 17 Wn. App. 2d at 345.  This court engages in a two-part analysis to determine if an evidentiary ruling by a trial court has infringed on the right of a criminal defendant to present a defense.  *State v. Arndt*, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019); *see also Jennings*, 199 Wn.2d at 58; *Ritchie*, 24 Wn. App. 2d at 627.  The initial decision to admit or exclude the evidence is reviewed for abuse of discretion, in the context of the relevant evidentiary rule.  *Jennings*, 199 Wn.2d at 58; *see also Arndt*, 194 Wn.2d at 797-98; *Ritchie*, 24 Wn. App. 2d at 627.  If the reviewing court determines that the evidentiary ruling was not an abuse of discretion, that threshold inquiry is then followed by de novo review to determine if

the defendant's Sixth Amendment rights have been violated. *Jennings*, 199 Wn.2d at 58; *see also Arndt*, 194 Wn.2d at 797-814; *Ritchie*, 24 Wn. App. 2d at 627.

The parties litigated the scope of Zhang's cross-examination of J.W. before opening statements. Again, at no point in the hearings addressing pretrial motions or during trial did the judge prevent Zhang from cross-examining J.W. about her retention of civil counsel, the filing of the lawsuit against him and Futurewei, or the fact or terms of the settlement. To the contrary, there is evidence adduced on both direct and cross-examination about each of those topics, with the notable exception of the precise terms of the settlement agreement. Zhang comprehensively cross-examined J.W. on the timing of her report to the police in relation to her retention of civil counsel and the fact that she pursued a claim for money damages in that suit, heavily suggesting that J.W. filed suit against Futurewei and Zhang before reporting that she had been raped.

Perhaps more fatal to this assignment of error, the record clearly establishes that Zhang's counsel simply did not ask questions which would have elicited the information he now argues was critical to his theory of the case. Because there was no evidentiary ruling adverse to Zhang that prevented him from drawing out the information on every topic except the one he specifically wanted excluded, we need not engage in the second step of the analysis. "[W]hen the defendant has an opportunity to present [their] theory of the case, the exclusion of some aspects of the defendant's proffered evidence will not amount to a violation of the defendant's constitutional rights." *Ritchie*, 24 Wn. App. 2d at 635. Thus, because Zhang was able to pursue his defense theory of financial motivation to

lie, despite the prohibitions on some specifics of the settlement agreement that he expressly sought, he has not established a violation of his right to present a defense.[9]

III.     Prosecutorial Misconduct in Closing Argument

Finally, Zhang avers the prosecutor committed misconduct in closing by arguing facts outside the evidence presented at trial and making a false statement. A prosecutor, as counsel representing the State, has two main functions: enforce the law by prosecuting those who transgress it and represent the people "in a search for justice." *State v. Monday*, 171 Wn.2d 667, 676, 257 P.3d 551 (2011). "Defendants are among the people the prosecutor represents." *Id.* Prosecutors have a duty to ensure that an accused person's "rights to a constitutionally fair trial are not violated." *Id.* Prosecutorial misconduct is grounds for reversal "'if the prosecuting attorney's conduct was both improper and prejudicial.'" *Id.* at 675 (quoting *State v. Fisher,* 165 Wn.2d 727, 747, 202 P.3d 937 (2009)). Improper conduct is not considered in isolation, but rather in the whole context of the trial. *Id*. A prosecutor's conduct is prejudicial only if there is a "'substantial likelihood'"

---

[9] In his supplemental assignments of error, Zhang raises another related due process claim based on a purported violation of the appearance of fairness doctrine. This challenge is rooted in the ex parte communication between the prosecutor and the court during the attempts to obtain the settlement agreement for the in camera review. However, Zhang's counsel were present both times the logistics of conducting the review were addressed on the record, the second of which occurred in response to Zhang's inquiry, wherein the trial judge directed the prosecutor to communicate with J.W.'s civil attorney and provide the agreement to the court for review. At no point did Zhang raise any concerns about the ex parte communication that would necessarily arise under the procedures outlined by the court.

Accordingly, Zhang must satisfy the requirements of RAP 2.5 in order to obtain appellate review of a matter not preserved by objection in the trial court. Because Zhang does not cite, much less attempt to apply, the standard set out in the RAP, and because we have separately determined that the judge's rulings on admissibility and sealing were erroneous, we do not analyze this challenge further.

that the jury's verdict was affected by the misconduct. *Id*. (internal quotation marks and emphasis omitted) (quoting *State v. Yates*, 161 Wn.2d 714, 744, 168 P.3d 359 (2007)). If the defense does not make a contemporaneous objection to the conduct of the prosecutor, "the issue becomes whether any curative instructions would have effectively erased the prejudice." *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). Even in the absence of an objection, an appellate court can still reverse a conviction if the prosecutorial misconduct is so "flagrant and ill intentioned" that it could not be cured by instruction from the judge. *Id*.

Here, Zhang did not object to the statements he now contends were misconduct. Accordingly, his challenge on appeal is subject to the higher standard for prejudice. In rebuttal closing argument, the prosecutor said,

> If this was all about money, [J.W.] got her settlement. She got it a year or two ago. She said it has nothing to do with this case. Why not just walk away?
> . . . .
> It's because it happened.

Zhang asserts that the statement that J.W. got her settlement "a year or two ago" falls outside the evidence presented at trial and that the insinuation that she could have "just walk[ed] away" was not true.

The State notes that prosecutors are given wide latitude to argue reasonable inferences from the evidence. *State v. Robinson*, 189 Wn. App. 877, 893, 359 P.3d 874 (2015). J.W. testified on both direct and cross-examination about the fact of a settlement in the civil case and Zhang's theory of the case was that the settlement included some sort of payment. In fact, in opening statements, Zhang's attorney expressly stated, "There is a financial motive in this. [J.W.] sued

- 26 -

for money based on this." The State avers that even if the prosecutor's statement that "[J.W.] got her settlement" did not precisely conform with the testimony, it was a reasonable inference based on the evidence.

As to the second aspect of his prosecutorial misconduct claim, in order to support his contention that the "walk away" statement was false and misleading, Zhang devotes a significant portion of his briefing on this issue to discussing the tools at the State's disposal to compel a witness' appearance at trial. However, even if we assume, without deciding, that the challenged comment was misconduct, Zhang did not object at trial and has not met his burden on appeal to prove that these statements, separately or combined, were so "flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). Had Zhang presented a contemporaneous objection to these statements, the court could have directed the jurors to disregard them or order them stricken. We presume that jurors follow the instructions of the court. *Id.* at 766. Zhang simply does not engage with the applicable legal test to demonstrate how these statements could not have been cured.

Zhang fails to establish reversable error. Accordingly, we affirm.

_____, A.C.J.

WE CONCUR:

_____
Díaz, J.

_____
Mann, J.

- 27 -